## LINDON VS. ELDRED.

*April 21 — May 11, 1880.*

CONTRACT OF SALE OF GOODS. *(1) Waiver of strict performance as to time. (2, 3) Vendee's default: Vendor's sale of goods in his hands: Notice to vendee, etc.*

Defendant agreed to take of plaintiff a certain amount of pork at a specified price, to be paid for from time to time when ordered, and all to be delivered by October 1, 1876. A part of it was delivered after that date, and defendant requested the delivery of still more, which plaintiff refused on the ground that part of that already delivered had not been paid for, and on the 22d of December he offered to ship more upon such payment. On the 19th of December, plaintiff notified the defendant to order the shipment of the residue of the pork and make payment within ten days; and on his failure to do so, notice of a public sale of the pork remaining in plaintiff's hands was published January 15, 1877, and the sale made five days thereafter. *Held,*

1. That by the acts of both parties a strict performance within the time originally fixed was waived, and defendant was not finally in default until December 29th.

2. That the sale was made with due diligence and within a reasonable time after such final default, and defendant was liable for the difference between the price obtained and the contract price.

3. That the defendant cannot complain of the sale on the ground that he had no *personal* notice thereof; nor can he complain that the sale of a portion of the pork was made only nominally to a third person, and really to plaintiff himself, where it appears that the price obtained was the *full market price* on the day of sale.

APPEAL from the Circuit Court for *Milwaukee* County.

On the 1st of April, 1876, defendant entered into the following contract in writing with plaintiff: "I this day agree to take of *Mr. J. Lindon* three hundred barrels of mess pork at $22 per barrel. Said pork to be paid for from time to time when ordered. Said pork to be delivered on cars. I to pay interest and insurance on said pork until delivery of same. Interest to be ten per cent. All the pork to be delivered within six months from date." Plaintiff was engaged at that time in the business of packing pork in the city of Water-

Lindon vs. Eldred.

town in this state; and it would seem that defendant was engaged in operating saw mills and carrying on a lumber and logging business in the county of Oconto. The complaint alleges that immediately after the making of said contract, *three hundred barrels of pork were selected from plaintiff's stock, and placed in a separate portion of his warehouse, and stored therein for defendant at his request;* that from time to time thereafter, until October 1, 1876, numbers of said barrels were forwarded on the cars, upon defendant's order, to places designated by him; that the quantity so forwarded up to the date last mentioned was 145 barrels; that defendant neglected to order and accept the remaining 155 barrels according to the terms of the contract, though requested so to do by plaintiff; *that plaintiff performed all the conditions of said contract on his part,* and was always ready and willing to forward said pork to defendant as required by the contract; that on the 19th of December, 1876, plaintiff caused to be served upon defendant a notice in writing, that unless defendant ordered and accepted said 155 barrels, and paid for the same within ten days thereafter, plaintiff would proceed to sell the same in open market, and credit the defendant with the proceeds thereof; that defendant neglected to order, accept and pay for said 155 barrels, and plaintiff thereupon, on the 20th of January, 1877, in satisfaction of his lien for the purchase price, *sold the same at public auction; that due notice of the time and place of such sale had been first given by advertisement; that the net sum realized from such sale was $2,152.75;* that defendant paid plaintiff the cost of insuring said pork to October 1, 1876; that plaintiff paid $40.50 for insurance upon said 155 barrels of pork, no part of which has been paid by defendant; that defendant paid plaintiff $1,100 September 7, 1876, and $990 two days thereafter; *and that there remained due from him to plaintiff under the contract $2,889.88, with interest from January 20, 1877, at ten per cent.*

Lindon vs. Eldred.

There was a second cause of action, which need not be stated here.

The answer denied the averments printed above in italics, and also denied that defendant had failed to perform his contract, and that any proper notice of the alleged sale of the pork was given to him. It then alleged that defendant, being desirous of purchasing some good heavy mess pork to supply the men engaged by him in his business, applied through his agent at Watertown for pork of that quality and for that purpose; that plaintiff thereupon represented to said agent that the pork he then had was good heavy mess pork, in sound condition and suitable for the purpose described; that thereupon, relying upon said representations, defendant, through his agent, entered into the contract above stated; that none of said pork was exhibited to said agent, and the purchase was made solely on plaintiff's representation; that it was thereupon further agreed between the parties that plaintiff should procure the three hundred barrels of pork to be stored in some suitable brick warehouse, said pork then being in the open air and exposed to the sun and weather; that plaintiff did not procure said three hundred barrels to be so stored, but allowed them to be exposed to the sun and weather, whereby the pork became greatly lessened in value; that plaintiff's said representations were false, and said pork was not good heavy mess pork, or of good quality or suitable for the purpose for which it was purchased, but was dirty and soft and contained large numbers of shoulder pieces, etc., etc., and was not worth more than $10 per barrel, whereas the price agreed to be paid was the then ruling price for heavy mess pork of the best quality; that on discovering this fact defendant notified plaintiff thereof, and declined to receive any pork in fulfillment of said contract that was not good heavy mess pork, but was willing to receive, and desired to have and pay for according to the contract, good heavy mess pork; and that plaintiff never sent or offered to send any such pork, and would not send

the same, whereby defendant was greatly injured in his business.

At the trial, plaintiff introduced evidence tending to show that the pork set aside for defendant was heavy mess pork; that prior to November 29, 1876, he had shipped to defendant, on his order, 145 barrels; and that on the 19th of December, 1876, he served on defendant a notice dated that day and signed by plaintiff, as follows: "Take notice that upon the agreement of which the following is a copy [here follows a copy of the contract above recited], you are now indebted to me in the sum of $4,957.76, and I hereby demand that you pay the aforesaid sum to me, and that you dispose of and take away the 155 barrels of said pork now remaining in my warehouse at Watertown, Wis., within ten days of the service of this notice upon you. And take further notice that, if you fail to pay the sum aforesaid within the time aforesaid, I shall sell the said remaining 155 barrels of said pork for the best price I can obtain therefor in open market, and apply the proceeds thereof towards the payment of your aforesaid indebtedness to me." On January 15, 1877, plaintiff advertised the remaining 155 barrels of pork for sale at auction, by the following notice posted at various places in the city of Watertown: "AUCTION! The subscriber will offer for sale at his packing house, in the city of Watertown, at public auction, 155 barrels of old standard heavy mess pork, on Saturday, January 20, 1877, at 2 o'clock P. M. Terms cash, and quality guarantied. Watertown, January 15, 1877. JOSEPH LINDON." No notice of such sale, nor any notice other than that of December 19, 1876, was given to defendant. Plaintiff sold the 155 barrels of pork at public auction at the time and place designated: 10 barrels at $14.50; 132 barrels at $14; and 13 barrels were claimed to have been sold to John P. Sleight at $13.75 per barrel. Touching the latter alleged sale, Sleight testified as follows: "I purchased 13 barrels at that sale. I finally let *Lindon* dispose of it afterwards. I took it on a

debt in the first place." On cross examination he said: "*Lindon* was in my debt. I bought the 13 barrels and had it applied on my debt. I don't remember the amount of that debt. We had a good deal of dealing for the past twenty years. I did not remove the pork from *Lindon's;* I did not pay him for it that day; we settled two or three days afterwards. We settled in this way: I gave him the privilege of disposing of this pork. We settled up our affairs. I don't remember how we did settle now, but we straightened up with regard to pork and some of the debts and claims I had against him. He still owed me over and above the pork. He disposed of the pork; I cannot say whether it went up to Wausau or to Oconto; to Mr. Speis or to some other person. I did remember at the time, but don't remember now. *Lindon* handed the proceeds over to me some time afterwards; can't say how long afterwards — two or three months. Don't remember how much he handed over to me; I think less than I paid for it. . . . I took the pork as collateral security; as part of the debt. Q. You took that pork for collateral security; you didn't lose on that pork? A. It was sold for less. Q. But you didn't lose by that operation? A. I don't know whether I did or not. I cannot tell. I only held the pork as collateral, and if there was loss on it *Lindon* was to stand that loss."

Defendant introduced evidence showing payments on account of pork received, and also evidence tending to show that the pork delivered was not heavy mess pork, but was of inferior quality, soft and spongy.

It appears from the briefs of counsel that evidence was introduced to show the market value of mess pork at different periods prior and subsequent to October 1, 1876; but no part of this evidence appears in the printed case.

The court found the facts substantially as alleged in the complaint; but there was no finding as to the quality of the pork delivered to or set apart for the defendant, other than the general finding that plaintiff "faithfully and properly

kept and performed all the terms and conditions of said contract on his part." Defendant excepted specifically to all the findings of facts not admitted by the answer. He also excepted to said findings on the ground that they did not determine whether the pork delivered by plaintiff under the contract was or was not heavy mess pork; and he appealed from a judgment rendered in plaintiff's favor pursuant to the findings.

For the appellant there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Jenkins*. They contended that the ordinary measure of damages in case of refusal by a vendee of personal property to receive it, is the difference between the contract price and the market price on the day of the breach, at the place of delivery; that, by an exception to this rule, the vendor, fully and carefully satisfying the regulations prescribed by law, is permitted to sell the property as that of the vendee, and recover the difference between the contract price and the net avails of the sale; but that the court erred in treating this as a case falling under that exception. 1. Plaintiff held the pork upon a falling market for over two and a half months after the day for delivery (when his cause of action accrued), before making any election; and he then waited another month before sale; and the evidence shows that the property brought nearly $1,000 less than it would have brought if sold at or about the time of the breach of the contract. He cannot impose upon the defendant a loss caused by this inexcusable delay. The authorities demand strict diligence of the vendor in making his election and in disposing of the property, and at least assert that he must act with reasonable promptness, and sell "in a short time." *Stewart v. Cauty*, 8 M. & W., 160; *Shaw v. Holland*, 15 id., 136; *Pott v. Flather*, 16 L. J., Q. B., 366; *Pickering v. Bardwell*, 21 Wis., 565; *Chapman v. Ingram*, 30 id., 295; *Applegate v. Hogan*, 9 B. Mon., 69; *McCombs v. McKennan*, 2 Watts & S., 216; *Haines v. Tucker*, 50 N. H., 313–314. 2. Plaintiff's act in retaining the property for two months

Lindon vs. Eldred.

and nineteen days was in law an election to treat it as his own. 3. In the case of a pledge, personal notice must be given to the pledgor of the time and place of sale; and such ought to be the law where a vendor sells property to satisfy his lien for purchase money. "An unpaid vendor, with the goods in his possession, has more than a mere lien on them; he has a special property analogous to that of a pawnee." Benjamin on Sales, § 794. Where the vendee is to be charged with the difference between the contract price and the amount realized on the sale, it seems just and reasonable that he should have notice of the time and place of sale, that he may be present, if he so desire, to save the property from sacrifice. This is the view adopted in some of the cases. *McEachron v. Randles*, 34 Barb., 301; *Mallory v. Lord*, 29 id., 454; *Brown v. Ward*, 3 Duer, 660; *Stearns v. Marsh*, 4 Denio, 231; *Ullman v. Kent*, 60 Ill., 271, 274; Benjamin on Sales, § 782. [Counsel stated that a different view of the law was announced in *Pollen v. Le Roy*, 30 N. Y., 549, and that the latter view was sustained by numerous American decisions, but argued against it as unreasonable.]

As to the thirteen barrels nominally sold to Sleight, counsel argued that they were in fact and in law sold to the plaintiff himself; that such a sale was a mere nullity as regards the measure of damages *(In re The Taylor Orphan Asylum*, 36 Wis., 534; *Judd L. & S. Oil Co. v. Kearney*, 14 La. An. 352); and that plaintiff should therefore be charged with those thirteen barrels at the contract price.

*L. S. Dixon*, for the respondent, argued, among other things, 1. That plaintiff might, "with due precaution," sell the property to satisfy his lien on it for the price, and recover the unpaid balance *(Ganson v. Madigan*, 15 Wis., 144, and 13 id., 67); and that, in order to charge the vendee with the difference between the contract price and the price obtained, it was sufficient to show a fair and proper sale, and not necessary to show notice to the vendee of the time and place of sale. *Pollen v.*

*Le Roy,* 30 N. Y., 549; *Dustan v. McAndrew,* 44 id., 72; *Crooks v. Moore,* 1 Sandf., S. C., 297; *Bement v. Smith,* 15 Wend., 493; *Sands v. Taylor,* 5 Johns., 395; *Rosenbaums v. Weeden,* 18 Gratt., 785; *Girard v. Taggart,* 5 S. & R., 19; *McCombs v. McKennan,* 2 W. & S., 216; *Gaskel v. Morris,* 7 id., 32; *Appleyate v. Hogan,* 9 B. Mon., 69; *Haines v. Tucker,* 50 N. H., 313; *Redmond v. Smock,* 28 Ind., 365; *P., C. & St. L. Railway Co. v. Heck,* 50 id., 303; *Saladin v. Mitchell,* 45 Ill., 80; *Lamblin v. Crawford,* 8 Ala., 153; *Langfort v. Tiler,* 1 Salk., 113; *S. C.,* 6 Mod., 162; *Boorman v. Nash,* 9 B. & C., 145 (17 E. C. L., 73); *Maclean v. Dunn,* 4 Bing., 722; *Acebal v. Levy,* 10 Bing., 376 (25 E. C. L., 170); *Mertens v. Adcock,* 4 Esp., 251; *Greaves v. Ashlin,* 3 Camp., 426; *Stewart v. Cauty,* 8 M. & W., 160. The opinion expressed in § 787 of Benj. on Sales, that *Valpy v. Oakeley,* 16 Ad. & El. (71 E. C. L.), 941, and *Griffiths v. Perry,* 1 El. & El. (102 E. C. L.), 680, decide that the vendor has no right to resell, is not sustained by an examination of those cases; and that Mr. Benjamin was wrong in his inference appears from later decisions in *Ogg v. Shuter,* L. R., 10 C. P., 159 (11 Moak, 316); *Same v. Same,* L. R., 1 C. P. D., 47 (15 Moak, 231); *Gunn v. Bolckow,* L. R., 10 Ch. Ap., 491 (14 Moak, 739). The only decision that notice of the time and place of sale must be given to the vendee, is found in 34 Barb., 301; but the doctrine of that case was criticised and rejected by the court of appeals in *Pollen v. Le Roy, supra,* and also by the supreme court of Virginia in 18 Gratt., 785, 794. The right of the vendor in cases like this to resell without notice to the vendee of the time and place of sale, is like that of the vendor exercising the right of stoppage *in transitu,* for which see note to 1 Chitty on Con., 11th ed., 602; *Newhall v. Vargas,* 15 Me., 314; *Kymer v. Suwerkropp,* 1 Campb., 109; Abbott on Shipp., 6th ed., 516; Smith's Merc. Law, 549; 2 Kent, 541. 2. That the testimony of Mr. Sleight did not in any way impeach the good faith or fairness of the sale: (1) Because Sleight

Lindon vs. Eldred.

purchased the property at the sale in good faith, the price to be applied to plaintiff's indebtedness to him, and the arrangement subsequently made between him and plaintiff does not affect the question. (2) Because the vendor himself may become the purchaser at the resale, if he act in good faith and with fairness. *Girard v. Taggart*, 5 S. & R., 19, 20. In *Judd Linseed & Sp. Oil Co. v. Kearney*, 14 La. An., 352, actual fraud and bad faith were clearly shown, and the cause was decided on that ground. 3. That the rule requiring the vendor in an executory contract for the sale and delivery of property at a future day, under which no title passes to the purchaser, to resell promptly, if at all, after the vendee's refusal to receive and pay *(Stewart v. Cauty, supra; Shaw v. Holland*, 15 M. & W., 136; *Pickering v. Bardwell*, 21 Wis., 565), has no application whatever to a case like this, where the title of the goods has passed and become vested in the purchaser, and nothing remains to be done but for him to receive and pay according to agreement, and where, upon his refusal to do so, the vendor retains a lien for the unpaid price. In the cases cited above, the resales which have been sustained as establishing the vendor's damages for the breach took place variously from six weeks to six months after the breach. The only rule of diligence applicable to the vendor in such a case is, perhaps, that he shall be guilty of no unreasonable delay in making the sale after he has given the vendee notice of his intention to sell. Here the sale was made within three weeks after the time fixed by the notice for the defendant to receive and pay for the pork. See especially on this subject, 18 Gratt., 795–98.

ORTON, J. In our view of the evidence in this case, it is unnecessary to inquire whether the contract of sale was so far an executed one that the property in the pork passed to the defendant at the time, so that the part of it yet remaining in the possession of the plaintiff could be sold *at any time* to

pay the balance of the purchase money, or remained so far an executory one that the rule recognized in *Pickering v. Bardwell*, 21 Wis., 565, requiring such sale to be made within a *reasonable time*, to entitle the plaintiff to call upon the defendant to make up the loss, is alone applicable.   Nor is it necessary to determine the question, so ably discussed by the learned counsel, by the reason and weight of conflicting authorities, whether the rule of *diligence* is not the true rule in either case.   The evidence appears to be clear and conclusive that the plaintiff did proceed with due diligence, and within a reasonable time, to sell the remaining part of the property at public auction, after the actual default of the defendant.

The six months limited in the contract for the last delivery and payment expired the first day of October, 1876.   Thirty barrels of the pork were delivered and received after that time, and the defendant requested by letter the delivery of still more, as late as the ninth day of December, which the plaintiff refused, on the sole ground that some part of that already delivered had not been paid for, and the plaintiff offered to ship more upon such payment, as late as the 22d day of December.   Notice was given by the plaintiff to the defendant, on the 19th day of December, to order the shipment of the residue of the pork and make payment within ten days.   Notice of the public sale was published on the 15th day of January, 1877, and the sale took place on the 20th.

The time fixed in the contract was treated by both parties as non-essential, and their conduct clearly waived the strict performance in this respect, and postponed the final default of the defendant until the 29th day of December.   *Durand et al. v. Sage*, 11 Wis., 151; *Fisk v. Tank et al.*, 12 Wis., 276.   After this time the sale was made with due diligence and within a reasonable time.   There is no special finding of this fact of diligence, but from the legal conclusions and judgment of the court in favor of the plaintiff, such a finding must be pre-

Lindon vs. Eldred.

sumed, especially in a case where all the undisputed facts show such diligence.

The only purpose of this public sale of the residue of the property, in which the defendant had any interest, was to fix the true market value of the property at that time. The presence and bidding of the defendant at the sale, and his purchasing the residue of the pork at a higher price than that offered by others, could not have made the market price, even if higher, more favorable to himself as one of the contracting parties. The higher his bid, the more he would have to pay for the property purchased at the sale, and the less would be the amount remaining to be paid as the difference between the contract price and the market value, fixed by his own bid; so that he could have gained nothing by his being present and bidding at the sale, except a profit upon his purchase, and this any other purchaser would have realized as well. His only interest as a bidder was that of any other person, and he had the same notice of the sale, and no cause of complaint because he did not have a *personal* notice. And so it may be said of the other question discussed on the argument, whether the sale of thirteen barrels of pork, nominally made to one Sleight, was not made in the interest and for the benefit of the plaintiff. The only interest the defendant has in this question is as it affected the true market value of these thirteen barrels at the time; and it does not appear that they could have been sold for a higher price to any other bidder.

This is certainly not a very difficult case, upon the facts, when divested of questions not material to its decision; and we can find no error in the record.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.