## COOK & COMPANY v. FINCH.

Where property is bought under the implied warranty that it is reasonably suited
to the use intended, an acceptance by the purchaser of the property waives
all defects which might have been discovered by the exercise of ordinary care
and prudence before delivery. In case of an express warranty that the prop-
erty sold will be of a particular kind and quality, the purchaser has a right
to rely on the warranty, and may plead partial failure of consideration grow-
ing out of defects discovered after acceptance, even though they would have
become apparent upon an examination before delivery.

Argued March 18,—Decided April 6, 1903. Rehearing denied May 7, 1903.

Complaint.    Before Judge Nottingham.    City court of Macon.
April 19, 1902.

*Hardeman & Moore*, for plaintiff in error.
*J. E. Hall* and *R. D. Feagin*, contra.

COBB, J.    Finch brought suit against Cook & Company for $150,
on an open account for 100 cords of pine wood at $1.50 per cord.
The defendants pleaded that they had made a contract with plain-
tiff to furnish them with 100 cords of pine wood at $1.50 per cord,
the wood to be delivered on the right of way of a railroad, and to
be loaded by defendants on the cars.    The plea further alleged:
Without notice to defendants, and in violation of the contract,
plaintiff had 79 3/4 cords of green pine wood loaded on ten cars,
averaging 8 cords to the car, whereas 10 cords should have been
put on each car, freight and trackage being charged by the car and
not by the cord.    Defendants had sold the wood to the Stratton
Brick-Yard for $2.75 per cord, and, on account of the failure of
plaintiff to comply with his contract, defendants lost $38.75, the
amount of profits which they would have made on their contract
for the sale of the wood.    The wood was bought by defendants
from plaintiff for immediate use as firewood, and plaintiff well knew
this fact, and that the wood actually furnished was unsuited to the
use intended; the wood delivered being worth only $.75 per cord on
the right of way of the railroad.    The wood was conveyed on the
cars to Stratton's Brick-Yard, and the persons in charge of the yard
refused to take it, on account of its green condition.    The defend-
ants thereupon put the wood on the market and sold five cars of
it for $79.50 and five cars for $94; making a total of $173.50.
From this amount defendants claim the right to deduct $82.50 ex-

pended for freight, $10 for trackage to the brick-yard, and $15 for trackage from the brick-yard to the points where it was sold by them. They claim also the right to deduct $38.75, the amount of profits alleged to have been lost by reason of the failure of plaintiff to comply with his contract; thus leaving a balance of $27.25 which is admitted to be due and which is tendered to plaintiff in full settlement of the contract. The evidence substantiated the material allegations of the plea as to the character of the contract between plaintiff and defendants. There was evidence that the wood was delivered on the right of way of the railroad in accordance with the contract, and was subsequently loaded on ten cars and shipped to the defendants at Macon, and side-tracked at Swift's Creek, a few miles below Macon. When notified that the cars were at that place the defendants paid the freight and ordered the wood shipped to Stratton's Brick-Yard. When the evidence is considered as a whole, it demanded a finding that the defendants received only 80 cords of wood. While plaintiff does testify that he shipped 100 cords, his testimony shows that he was at home sick when the wood was shipped, and he says 100 cords were shipped because the pile of wood from which they were taken consisted of "about 112 or 115 cords," and after the shipment he "estimated there were 12 or 15 cords left on the ground." In view of other evidence, positive and direct in its character, that there were only 80 cords on the cars, a finding that there were 100 was not warranted. There was some conflict in the evidence as to the quality of the wood, the person who bought five cars of the wood from the defendants testifying that it was "half-dry" and burned very well in a brick-kiln; while there was evidence that all of the wood was green, the twigs having green straw on them. The evidence also demanded a finding that the wood was sold by the defendants at the prices mentioned in their plea, and that they paid the amounts claimed to have been paid for freight and trackage. The evidence further showed that the defendants never saw the wood except when it was on the train going to Stratton's Brick-Yard. The jury returned a verdict for the plaintiff for $150 principal and $13.56 interest; and defendants' motion for a new trial having been overruled, they excepted.

Complaint is made that the court erred in charging the jury as follows : "There is a duty on purchasers to discover any defect that

may be ascertained by ordinary diligence ; and if you find that the defendants by the exercise of ordinary diligence could have discovered the defects in the wood, if there were any defects, before the same was delivered, then I charge you the defendants are estopped from setting up such defects as a defense." And also in charging: " If there were defects in the wood, and the defendants could not by the exercise of ordinary diligence have discovered the defects before delivery, you would be authorized to reduce the agreed price to what the wood was worth in the market." The plea of the defendants, properly construed, did not set up an express warranty by the plaintiff that the wood would be dry pine; and it is clear that no such warranty was shown by the evidence, one of the defendants testifying that " there was nothing particular said about whether the wood was to be green or dry." There was, however, an implied warranty raised by the law that the wood was reasonably suited to the use intended, and, according to the evidence, it was intended to be used as firewood. " If there is no express warranty, the purchaser must exercise caution in detecting the defects." Civil Code, § 3555. " An implied warranty of the fitness of property sold for ordinary use does not embrace defects discoverable by ordinary care." *Hoffman* v. *Oates*, 77 *Ga.* 701. " The law of implied warranty will not avail against patent defects, nor against latent defects which are either disclosed or are discoverable by the exercise of caution on the part of the purchaser." *Lunsford* v. *Malsby*, 101 *Ga.* 41. " The law imposes upon the vendee the duty of exercising caution in detecting defects; and hence it is a well-established rule, that where the defect is patent, or could have been discovered by the exercise of ordinary diligence, there can be no recovery upon the ground of implied warranty." *Snowden* v. *Waterman*, 105 *Ga.* 387. It follows, therefore, that where goods purchased under an implied warranty that they are reasonably suited to the uses intended are accepted by the vendee, he will be precluded from pleading, in an action on the contract of purchase, a partial failure of consideration growing out of any patent defects in the goods, or any latent defects which might have been discovered before the sale by the exercise of ordinary care and prudence. Even an inspection, however, will not deprive the purchaser of the protection of a warranty as to latent defects which could not have been discovered by the exercise of ordinary prudence. *Miller* v. *Moore*, 83 *Ga.* 684, 692.

But where a purchaser receives goods without inspecting them, or inspects them in a careless and indifferent manner, he will not, when sued on the contract, be heard to set up defects which he would have discovered before the delivery and acceptance of the goods, had he used proper diligence. Where, however, there is an express warranty that goods sold will be of a particular kind and quality, the purchaser has a right to rely on this warranty, and an acceptance will not prevent him from pleading the defective condition of the goods. The rule that the purchaser must exercise caution in detecting defects is, by the very terms of the code section cited above, confined to cases of implied warranty. See also, in this connection, *Miller* v. *Moore*, and *Snowden* v. *Waterman*, supra. Civil Code, § 3557, provides that, " After acceptance of goods purchased, the presumption is that they are of the quality ordered, and the burden is on the buyer to prove the contrary. Partial payments with knowledge of the defective condition will not estop the buyer from pleading partial failure of consideration." We think it is clear that this section relates to cases of express warranty. The use of the words, " of the quality ordered," necessarily implies that there was an express understanding between the parties that the goods would be of a particular quality. See *Atkins* v. *Cobb*, 56 *Ga.* 86 (5), 89, from which the code section just quoted was codified. See also *Florence* v. *Pattillo*, 105 *Ga.* 581.

Applying what is said above to the facts of this case, we think the charges given by the court were correct expositions of the law, and were adjusted to the issues raised by the pleadings and the evidence. There being no express warranty that the wood sold the defendants would be dry pine, and they having accepted it without an inspection, they are precluded from pleading as a defense that the wood was in fact green pine and not dry pine. This was manifestly a patent defect which would have been disclosed by the most casual inspection, the evidence in behalf of the defendants showing that the twigs had green straw on them. The sale was completed when the wood was delivered on the cars, the plaintiff having at that time performed everything that he contracted to do. The fact that it was not convenient for the defendants to go down and examine the wood is no fault of plaintiff's. Having bought on an implied warranty, they took the risk, when they accepted it and ordered it shipped forward, that it would prove reasonably suited to the use intended. And

even if, under the facts of the case, they were under no duty to inspect the wood until after it was side-tracked a few miles below Macon, it does not appear that they made the slightest effort to examine it then or at any other time.　So far as appears from the evidence, they never did make an inspection of the wood.　And even after the persons who had bargained with them for the wood had refused to accept it, the defendants acted on the assumption that they were bound by their contract with plaintiff, and actually sold the wood in the market at a reduced price.　Under these circumstances the plaintiff is not chargeable with the expense incurred in conveying the wood to the brick-yard and from there to the points where it was delivered to the purchasers from the defendants.　As stated above, however, the evidence demanded a finding that the defendants received only 80 cords of wood.　Acceptance would not prevent them from pleading this defect in quantity, as there was an express warranty that the amount furnished would be 100 cords.　The defendants are therefore liable to the plaintiff for the value of 80 cords of wood, at the contract price per cord.　Direction is given that if the plaintiff will write off from the amount recovered the sum of $30, with interest thereon for the time interest was calculated on the principal amount of the verdict, the judgment of the court below refusing to grant a new trial be affirmed; and that if this is not done, the judgment be reversed; the costs of this writ of error and of the motion for a new trial to be taxed, in either event, against the defendant in error.

*Judgment affirmed, on conditions.　By five Justices.*