# HENDERSON ELEVATOR COMPANY *v.* NORTH GEORGIA MILLING COMPANY.

1. In a contract for the sale of goods, words descriptive of the subject-matter of sale and the time of shipment are ordinarily to be regarded as a warranty.

2. Whether a contract be entire or severable depends on the intention of the contracting parties. A contract for the sale of 20,000 bushels No. 2 white corn, bulk, at 59 ½ cts. per bushel, 10,000 bushels to be shipped in February and 10,000 bushels in March, is to be construed as an entire contract.

3. Where there was a contract of sale of corn and a portion was delivered, paid for, and used by the purchaser, he can not rescind the contract upon the ground that the quantity received and accepted by him was inferior in quality to that stipulated in the contract.

4. But if the vendor delivered corn inferior in quality and in less quantities than stipulated in the contract of sale, the vendee, though unable to rescind the contract because of his inability to make restitution of the portion used by him, may, in defense to an action by the vendor to recover damages for a breach of the contract, recoup damages proximately flowing from the vendor's failure to deliver corn in the quantity and of the quality contracted for, provided there has been no waiver by the vendee touching the time of delivery or with respect to the quality of the corn tendered and accepted.

5. If the vendee accepted delivery of inferior corn, and, with knowledge of its inferiority, caused it to be ground into meal, the vendor will not be answerable in damages for the losses accruing from milling the corn. Nor can the vendee complain, after acceptance of the corn with knowledge of its defective condition, that it was inferior to the contractual quality.

*Argued January 19,—Decided August 17, 1906.*

Action for breach of contract. Before Judge Fite. Whitfield superior court. June 1, 1905.

The plaintiff corporation sued the defendants for a breach of contract. It alleged in its petition, that on January 26, 1903, it entered into a contract with defendants for the sale of 20,000 bushels of No. 2 white corn, bulk, at 59 1-2 cents per bushel, 10,000 bushels to be delivered in February, 1903, and 10,000 bushels to be delivered in March, 1903; that plaintiff and defendants, on February 20, 1903, entered into a contract of sale for 20,000 additional bushels of No. 2 white corn, bulk, at 60 cents per bushel, 10,000 bushels of which were to be delivered in March, 1903, and 10,000 bushels in April, 1903; that in compliance with its contract, plaintiff delivered to defendants 12,096 bushels of corn of the grade

contracted for, which defendants accepted and paid for at the contract price; that after delivery and acceptance of the 12,096 bushels, defendants, without sufficient cause, refused to accept further shipments of corn under the contract; and that plaintiff sold the corn which defendants refused to accept, after notice to them, at a sum less than the contract price. The suit was to recover the loss thus sustained. The defendants in their answer denied liability and put the plaintiff on proof of its case, also setting up the following special pleas: (1) When they made the contract sued on, they depended thereon to supply their mill with corn, and of this fact apprised the plaintiff; that, relying on the contract, they bought little or no corn elsewhere with which to run their mill, and although the plaintiff company had full notice that this was true, it nevertheless failed to comply with its contract and ship the corn as agreed on; that defendants were in consequence compelled to shut down their corn mill a great part of the time, one fourth of the month of February and two thirds of the month of March, and that they thereby sustained damages to the amount of $600. (2) The corn delivered was of an inferior quality, and this was defendants' reason for refusing to take the balance. According to the classification of grain adopted by the dealers of Henderson, Ky., the home of plaintiff, No. 2 white corn must comply with these specifications: "Sound, dry, and reasonably clean; may contain a limited quantity of colored grains, not to exceed ten per cent." The contracts made with plaintiff were based upon this classification. Nevertheless nine cars of corn shipped to defendants did not come up to contract, the corn not being sound and dry, but being wet, soggy, greasy, and unfit for milling; the "defendants repeatedly called the attention of plaintiff to these facts while the corn was being received, but the plaintiff failed and refused to send better corn. Defendants endeavored to save plaintiff from loss on this corn by milling and shipping same as carefully and quickly as possible, but notwithstanding this fact a large part thereof, to wit one half, totally spoiled as milling corn and was greatly damaged and inferior." (3) Of the corn shipped under the contract, two cars were good; "two cars were ground by defendants, and the meal spoiled and soured before it could be shipped from the warehouse," the meal being then mixed with bran and sold by defendants for cattle feed; two of the "cars soured before they could be

ground, and were sold by defendants for cattle feed, being entirely unfit for milling," and the "remaining five cars defendants ground and shipped as meal to the agents and customers of defendants. This meal all spoiled in shipment, and defendants were compelled to make large rebates to the buyers thereof. And owing to the defective quality of the corn so used and not used, defendants suffered large damage," to wit, $2,600.

The plaintiff demurred to paragraphs 8 and 9 of the answer (in which the defective condition of the corn was set up as a defense), on the grounds that no latent defect in the corn at the time of acceptance was alleged; that the damages claimed were too remote; and that the alleged losses resulted from defendant's own acts, with which the plaintiff was not chargeable. The court overruled the demurrer, and the plaintiff excepted pendente lite. The trial resulted in a verdict for the defendants on their plea of recoupment. A motion for a new trial was made, which being overruled, the plaintiff excepted, and assigned error on the overruling of its demurrer and the refusal to grant a new trial.

*F. K. McCutchen* and *C. D. McCutchen,* for plaintiff.

*R. J. & J. McCamy,* for defendant.

EVANS, J. (After stating the facts.) The motion for a new trial complained that many excerpts from the charge were erroneous, and that the court erred in refusing several written requests to charge, and in certain rulings on the admissibility of testimony. We shall not undertake to specifically deal with each of the numerous assignments of error, but will endeavor to discuss the legal principles which must control the case on the next trial under the pleadings as they shall stand after striking paragraphs eight and nine of the answer.

1. In a contract for the sale of goods, words descriptive of the subject-matter of sale and the time of shipment are ordinarily to be regarded as a warranty. The plaintiff agreed to sell and the defendants agreed to buy "20,000 bushels of number 2 white corn, bulk." "These words comprehend quality, as well as variety, and import a warranty on the part of the seller as to both." *Miller* v. *Moore,* 83 *Ga.* 692; *Americus Grocery Co.* v. *Brackett,* 119 *Ga.* 489. The contract of sale bound the seller to deliver the corn in stipulated quantities during certain months. It is to be presumed, as this is a mercantile contract, that the stipulations respecting de-

livery were not idle words, but were intended as a covenant binding the seller to make delivery to the purchaser in the quantity and within the time stipulated. Time was an important element, if not of the essence of the contract. Such a material incident of the sale should be construed as a warranty in that respect. Norrington *v.* Wright, 115 U. S. 188.

2. The contract of sale was for a stated quantity of bulk corn, with the provision for delivery of specific quantities within specific periods. The thing sold was one aggregate bulk, not several bulks of the quantity specified for each delivery. This is an important fact in determining the intention of the parties as expressed in their contract, when we come to construe the contract as being entire or severable. The criterion is whether the sale of the whole quantity, as a whole, is of the essence of the contract. If it appears that the contract was to take the whole or none, then it is entire. *Broxton* v. *Nelson,* 103 *Ga.* 330. It would seem to be beyond cavil that the parties intended that the contract of sale should operate on the full amount of corn therein stipulated. The seller could not have intended to sell nor the buyer to purchase a less quantity. We therefore hold that the contract was an entire one.

3. It was alleged in the pleadings and proved on the trial that the purchaser had accepted, paid for, and used a portion of the corn. The purchaser was thus not able to make restitution, so as to repudiate the contract. Lyon *v.* Bertram, 20 How. 149. A party may rescind without the consent of the opposite party only when both parties can be restored to the condition in which they were before the contract was made. Civil Code, § 3712. See, in this connection, *Timmerman* v. *Stanley,* 123 *Ga.* 850. The defendants admitted that they had refused to accept further shipments of corn under their contract with the plaintiff, but did not plead a rescission. It was their contention on the trial that the corn which was accepted by them was of inferior grade, and because of this fact, and the failure of plaintiff to deliver within the stipulated period, they refused to accept the balance of the corn. If a vendee has accepted a portion of a quantity of goods contracted for, and they prove inferior to those stipulated for, he can not for this reason refuse to accept the residue; but if the residue prove inferior, he may refuse to accept them. Cahen *v.* Platt, 69 N. Y. 348, 25 Am. Rep. 203. The defendants had contracted for corn

to be delivered during the months of February, March, and April. On March 23, they undertook to countermand their orders for corn, but made no offer to restore such corn as had previously been received. If corn not coming up to warranty was shipped, it could be summarily rejected; if not shipped within the time contracted for, the defendants could, if able to make restitution, elect to rescind the contract, or, without returning any of the corn received, hold the plaintiff liable for all proximate damages flowing from the delay. Corn under both of the contracts had been accepted, and until the time limited within which delivery could be made had expired, the plaintiff could call upon the defendants to accept additional shipments of corn coming up to warranty. By wrongfully refusing to further carry out the contracts, the defendants subjected themselves to a suit for damages for the breach. · "If a purchaser refuses to take and pay for goods bought, the seller may retain them and recover the difference between the contract price and the market price at the time and place for delivery; or, he may sell the property, acting for this purpose as agent for the vendee, and recover the difference between the contract price and the price on resale; or, he may store or retain the property for the vendee and sue him for the entire price." Civil Code, § 3551. The plaintiff elected to resell at the risk of the defendants, after giving notice to them of such intention; and if the corn was in good faith resold for the highest price that could be received for it, the plaintiff was entitled to recover the difference between the amount realized and the contract price.

4. By special plea the defendants asked that they be allowed to recoup damages sustained by them by reason of the delay of the plaintiff in making shipments of corn, which delay required them to shut down their mill for a large portion of the time during the months of February and March. If, as averred by the defendants, it was within the contemplation of the contracting parties that the corn was to be used for milling purposes at their mill in Dalton, and the delay in shipment forced them to shut down their mill, the damages sustained would be proximately caused by the plaintiff's breach of covenant to supply the corn necessary to keep the mill in operation. On the other hand, if the plaintiff's contention be in accord with the truth, the defendants were not entitled to recover for any losses thus sustained, because they expressly waived

a strict compliance with the covenant as to time of shipment and induced and brought about the delay, first by directing the corn to be routed over a certain line of railway which could not furnish a sufficient number of cars, and subsequently requesting plaintiff not to ship over a limited quantity of corn per week. A warranty of quality does not usually extend to patent defects, unless intended by the parties. Civil Code, § 3560; 30 Am. & Eng. Enc. Law (2d ed.), 160. A vendee who has exacted of the seller a warranty as to quality, and knowingly accepts goods deficient in the quality warranted, will be denied to subsequently assert their defective quality. His duty is to reject the article, and his acceptance with knowledge of the defect amounts to a waiver of the warranty as to such defect. *Miller* v. *Moore*, supra. There is no duty resting upon the purchaser who has bought goods under an express warranty to inspect the article purchased or exercise care in discovering any defects. He may rely on the contractual obligation of the seller that he will deliver goods of the quality warranted. *Haltiwanger* v. *Tanner*, 103 *Ga.* 314; *Moultrie Repair Co.* v. *Hill*, 120 *Ga.* 730. If subsequently to acceptance the buyer discovers that the goods do not come up to the warranty, he may rely on the warranty and plead partial failure of consideration. Civil Code, § 3557, provides: "After acceptance of goods purchased, the presumption is that they are of the quality ordered, and the burden is on the buyer to prove the contrary. Partial payment, with knowledge of the defective condition, will not estop the buyer from pleading partial failure of consideration." This section of the code is but a codification of the principle announced in *Atkins* v. *Cobb*, 56 *Ga.* 86, which was a case of express warranty. In *Cook* v. *Finch*, 117 *Ga.* 541, it was held that this section of the code was applicable only in cases of express warranty.

Applying these principles to the case at bar, if the purchaser knew that the corn was not of the quality contracted for and accepted the same, such acceptance will be a waiver of the warranty. But if he accepted the goods without inspection, and they were of defective quality, he was entitled to an abatement in the purchase-price for the breach of warranty, and the measure of damages would be the difference between the contract price and the actual value of the goods. *Grier* v. *R. Co.*, 120 *Ga.* 355. It was not insisted at the trial that there were any latent defects in the corn.

5. The case was tried upon a misconception of the law as regarded the right of the defendants to claim damages on account of the defective condition of the corn shipped to them, as their answer discloses the fact that they knew its condition before accepting it, waived strict compliance with the warranty as to quality, and merely protested to the plaintiff that the corn was unfit for milling. If the defendants wished to insist upon the express warranty that the corn should be sound and dry, under these circumstances, they should have refused to accept the nine cars which were loaded with corn which "was wet, soggy, greasy, and unfit for milling." Certainly they were not at liberty to grind such corn into meal, under a misdirected endeavor "to save plaintiff from loss," and then hold the plaintiff liable for the disastrous results of this misadventure. Indeed, having accepted the shipments with knowledge that the corn was not sound and dry, the defendants are not in a position to set up a breach of the warranty as to quality. Both the 8th and 9th paragraphs of the defendants' answer should have been stricken; for the plaintiff's demurrer clearly pointed out that they sought to recover damages, not because of any latent defects in the corn, but because of a patent defect of which they had actual knowledge before accepting the shipments and making payment therefor.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*