## NORTH GEORGIA MILLING COMPANY *v.* HENDERSON ELEVATOR COMPANY.

1. No duty rests upon a purchaser, who has bought goods under an express warranty as to quality, to inspect them, or to exercise care in discovering defects, before accepting and paying for the same. He may accept and pay for them, relying upon the obligation of the seller that he will deliver goods of the quality warranted, unless when he does so he has knowledge that they are not of the quality warranted.
2. The seller of goods, who, upon the refusal of the purchaser to accept delivery of the same, elects to resell them at the buyer's risk, is not bound to resell them at the contract place for delivery and within the contract time for delivery.
3. It was error for the court, in the presence of the jury, to express or intimate an opinion upon the evidence in the case.
4. Where parol evidence as to the contents of writings is properly objected to, it is error to admit it, even though in doing so the trial judge permits its introduction subject to being held of no probative value if contradicted by the writings when they are subsequently introduced.

Argued June 20, 1907.—Decided February 8, 1908.

Action for breach of contract. Before Judge Fite. Whitfield superior court. November 28, 1906.

*R. J. & J. McCamy* and *W. C. Martin,* for plaintiff in error.

*C. D. & F. K. McCutchen* and *W. E. Mann,* contra.

FISH, C. J. There have been two trials in this case. When the first was reviewed by this court (126 *Ga.* 279, 55 S. E. 50), a

statement of the facts and the legal principles applicable to the case was given. The present writ of error was sued out by the North Georgia Milling Company, assigning error upon the overruling of its motion for a new trial.

1. One of the issues in the trial now under review, and also in the first trial, was as to the right of the milling company to recoup damages for an alleged breach of the express warranty in respect to the quality of the corn accepted and paid for by it. The court, after giving to the jury the law on this subject, as announced by this court when the case was formerly before it, instructed them that if the defendant accepted the corn knowing of its condition, then no defense could be set up on account of its defective quality, and that what is meant by knowledge, in this connection, "is embraced in this section of the code, to which I call your attention: 'Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties.'" The court further charged, on the same subject: "I charge you that if they [defendants] made an inspection as far as they could reasonably do, and were misled, having used ordinary care and diligence in making the inspection, and went as far as they reasonably could, and there were hidden defects, or the condition of the corn was hidden from them, and they could not by reasonable diligence have found it, and they accepted it under these conditions, then they would be entitled to damages for the difference between the contract price and the actual value of the corn at the time it was inspected and it was received." And further: "If you come to the conclusion that the corn is not No. 2 corn, and you come to the further conclusion that the defendants had an opportunity to examine the corn, and did examine it, but did not make a thorough examination, having a thorough opportunity to do so, but accepted the corn under these conditions and paid for it, then you would not allow them anything for damages, because they would be held to have waived the warranty." The court also charged: "If you should come to the further conclusion that there was a partial examination, and the defendants examined as far as they reasonably could, and were not negligent in so doing, and accepted the corn believing that it was No. 2

corn, and afterwards ascertained that it was not, then you would allow for that which was so examined and so accepted the differ-ence between the contract price and the actual value of the corn so delivered." Proper assignments of error were made upon these instructions, in the motion for a new trial, by the milling company. The exceptions were well taken; as the instructions complained of were contrary to the law on the subject, as laid down by this court in this case, and in other cases, to the effect that no duty rests upon the purchaser, who has bought goods under an express warranty, to inspect the article purchased, or to exercise care in discovering any defects. He may rely on the contractual obliga-tion of the seller that he will deliver goods of the quality war-ranted. If, however, the articles be defective and the buyer knows of the fact, and with such knowledge accepts them, he will be deemed to have waived the defects, and can not recoup damages arising therefrom. *Springer* v. *Indianapolis Brewing Co.,* 126 *Ga.* 321 (55 S. E. 53) ; *Carolina Portland Cement Co.* v. *Turpin,* 126 *Ga.* 677 (55 S. E. 925). Of course, a warranty of quality does not usually extend to patent defects, unless so intended by the parties. Civil Code, §3560. A purchaser will be held to have waived an express warranty as to the quality of the goods pur-chased only where he has knowledge of the defect, and not where he might, by the use of ordinary care or diligence, have acquired knowledge of such defect. In other words, his waiver goes only to the extent of his knowledge, and not to discoveries which rea-sonable diligence might have brought to light. It is only in cases of implied warranty that the provisions of the section of the Civil Code, given in charge by the court, are applicable. *Cook* v. *Finch,* 117 *Ga.* 541 (44 S. E. 95) ; *Moultrie Repair Co.* v. *Hill,* 120 *Ga.* 730 (48 S. E. 143). What we have said on this subject will dis-pose of certain grounds of the motion for a new trial, assigning error upon the refusal of written requests to give certain charges presented by the milling company.

2. The elevator company was seeking to recover damages from the milling company for refusing to accept about 28,000 bushels of the corn purchased, which the elevator company, after notice to the milling company, had sold at the latter's risk. Error was assigned by the plaintiff in error, the milling company, upon the refusal of a certain written request to charge, the purport of

which was as follows: Under our law a seller of goods, in case the buyer refuses to accept the same, without legal excuse, may resell the same for the buyer's account, and collect from him the difference between the contract price and the price obtained on the resale. Where the seller avails himself of this right, he must sell the goods at the contract place of delivery, and within the contract time for delivery, for the best price he can obtain. The court properly refused to instruct the jury as requested; as the seller will comply with the law, if, after giving notice to the purchaser of intention to resell, the sale be made, in good faith, within a reasonable time, and for the best price obtainable. He is not bound to sell at the contract time and place for delivery. The Civil Code, §3551, provides that if a purchaser refuses to accept and pay for goods bought, the seller may avail himself of any one of three remedies therein stated, one of which is, "he may sell the property, acting for this purpose as agent for the vendee, and recover the difference between the contract price and the price on resale." When and where the resale may take place is not stated; but as, in such resale, the vendor acts as agent of the vendee, and is without instructions from his principal as to the time and place of sale, and is uninstructed by the statute in this respect, he is simply bound, in good faith, to exercise ordinary and reasonable care to sell the goods under such circumstances, as to time and place, as will be most likely to fully protect the interests of his principal, the original buyer. The well-established rule, as to the time when the goods shall be resold, is simply that they shall be sold within a reasonable time. It is not necessary that the resale shall be at the earliest possible time after the default of the buyer is known. Smith *v.* Pettee, 71 N. Y. 13; Pickering *v.* Bardwell, 21 Wis. 569; Stuart *v.* Cauty, 8 Mees. & Wels. 160; Rosenbaums *v.* Weeden, 18 Gratt. 785 (98 Am. D. 737). This is the rule, as to time, which was laid down in *Camp* v. *Hamlin, 55 Ga.* 259, the decision in which was rendered prior to the adoption of section 3551 of the Civil Code, wherein the law on this subject was first laid down in statutory form. The general rule is, also, that the place of resale need not be the contract place for delivery. Lewis *v.* Greider, 49 Barb. 606, affirmed, 51 N. Y. 231; Pollen *v.* Le Roy, 30 N. Y. 549; McGibbon *v.* Schlessinger, 18 Hun, 225; Sawyer *v.* Dean, 114 N. Y. 481 (21 N. E. 1012); Linden *v.* Eldren, 49

Wis. 305 (5 N. W. 862); Tiedeman on Sales, §334: Waples v. Overaker, 77 Tex. 7 (13 S. W. 527, 19 Am. St. R. 727). The general rule as to the place and mode of resale is thus stated in 3 Sutherland on Damages, §647, p. 1863: "The place of resale is not necessarily restricted to that where by contract the vendees were bound to receive the property; the vendor is authorized to exercise a reasonable discretion as to the place of sale, and may also, at the expense of the vendee, insure the property. If there are several modes of sale open to the vendor, he may adopt such as his judgment approves; if he uses diligence in pursuing the one adopted, nothing more is required of him."

The only decision of this court which has dealt with the questions of the time, method, and place of resale is that rendered in *Camp* v. *Hamlin,* 55 *Ga.* 259, to which we have already alluded. If that decision were now, in all respects, the law of this State, our conclusion that the resale need not be at the contract place for delivery would be erroneous; and the defendant in the court below might have gone further than it did, and insisted that the resale should have been at auction. It was there held: "The purchaser of goods at a stipulated price, who refuses to accept and pay for them according to his written contract, is liable to the seller in damages for the difference between such price and the market value of the goods at the time and place fixed by the contract for delivery; and the seller, after a tender of the goods and a refusal by the purchaser to receive them, may, if they be perishable, expensive to keep, or likely to go out of season, sell them within a reasonable time, at auction, in the market of delivery, and the amount they bring will be evidence in ascertaining the damages." That decision was, however, as we have said, rendered before the adoption of the statutory provisions contained in the Civil Code, §3551, which were not found in any Code of this State prior to the adoption of the Code of 1895. It seems clear to us that that section was not intended to follow the law as laid down in *Camp* v. *Hamlin.* The section in full is as follows: "If a purchaser refuses to take and pay for goods bought, the seller may retain them and recover the difference between the contract price and the market price at the time and place for delivery; or, he may sell the property, acting for this purpose as agent of the vendee, and recover the difference between the contract price and

the price on resale; or, he may store or retain the property for the vendee and sue him for the entire price." It will be observed that the law as now laid down in the Civil Code does not provide that the resale must be at auction, which it seems it would have done if the intention of the lawmakers had been to follow the decision in question. Moreover, the decision limits the right of a seller to resell the goods, at the risk of the buyer, to cases in which the goods are perishable, expensive to keep, or likely to go out of season, while the statutory provision does not, but evidently embraces all cases in which a buyer refuses to take and pay for the goods bought, according to his contract. Again, it is significant that the statute provides that if the seller retains the goods he may recover the difference between the contract price and the market price at the time and place for delivery; which was the rule laid down in the decision in question for a case in which a seller resells the goods, the price obtained at the resale being there held to be simply evidence in ascertaining such difference; but, under the statute, if the seller adopts the remedy of a resale, he may recover the difference between the contract price and the price obtained upon such resale. For these reasons, we are of opinion that the law as laid down in *Camp* v. *Hamlin* was changed when the present Code was adopted; and we have, therefore, felt free to follow what we believe to be the general rule on the subject under consideration, and the one which seems to us to be most likely to subserve the interests of both buyer and seller. Our ruling upon the request to charge also disposes of the complaint in the motion for a new trial, that the court, in its instructions upon the subject of resale, failed to charge the jury that the resale must be at the contract place for delivery, and within the contract time for delivery.

3. Exception was also taken to the following charge: "Corn under both contracts had been accepted; and until the time limited within which delivery could be made had expired, the plaintiff could call upon the defendants to accept additional corn coming up to warranty. By wrongfully refusing to carry out the contracts, the defendants subjected themselves to a suit for damages for the breach." The exception was, that the court, in this charge, expressed an opinion as to what had been proved in the case. The exception was well taken. It does not appear, from the evidence

in the record now before us, that corn had been accepted under both contracts; though it does appear that some corn was accepted during the time that corn was to be delivered under the last contract, but all the corn purchased under the first contract had not been delivered and accepted. While this expression of opinion upon the evidence, as to corn having been accepted under both contracts, was erroneous, the statement made by the court does not appear to have been material or hurtful to the party complaining. But the statement that the defendant, the milling company, had wrongfully refused to carry out its contract, and thereby subjected itself to a suit for damages for the breach, was stating as a fact something which was certainly hurtful to the defendant. As the judgment is to be reversed upon other grounds of the motion, it is not necessary to decide whether this expression of opinion by the court would, under the facts of the case, require the grant of a new trial. Other expressions of the judge during his charge, as well as certain remarks made by him during the progress of the trial, were excepted to as being expressions of opinion as to the facts of the case; but we do not deem it necessary to deal with them specifically, as a new trial is to be granted, and upon another trial the judge will hardly use these same unguarded expressions again. In two instances they were what this court said when dealing with the facts as shown by the former record; but a court of last resort may, and often must, express its opinion as to the facts as disclosed by the evidence, while the trial court is not allowed to do so, in the hearing of the jury empaneled to try the case.

4. The court permitted the witness Williams to testify to certain matters, over the objection of the defendant that certain letters and telegrams which passed between the parties were higher evidence as to these matters. The court, in admitting the testimony, said: "Gentlemen, this case was tried once, and it is long and tedious; and anything this witness says in contradiction of any letters that may hereafter be introduced won't have any weight with the jury; but, in order to expedite this case and to get at the real facts, I will let him go along and make explanations of these things, subject to the letters that may hereafter be introduced as evidence in the case." The judge, in his general charge to the jury, instructed them, in effect, that where any parol testi-

mony which he had permitted to go before them was in conflict with written evidence introduced, they should not consider such parol evidence. This was not proper practice, but the parol evidence should have been excluded where it appeared that there was higher written evidence.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*