14948. STEWART-MOREHEAD CO. *v.* BIBB MFG. CO.

14967. BIBB MFG. CO. *v.* STEWART-MOREHEAD CO.

Under the facts of the case, the court erred in setting the verdict aside on its own motion, and in refusing to render the judgment asked for by the plaintiff.

DECIDED JULY 16, 1924. REHEARING DENIED AUGUST 8, 1924.

Action for breach of contract; from Bibb superior court—Judge Malcolm D. Jones. June 26, 1923.

Application for certiorari was denied by the Supreme Court.

*John R. L. Smith, Grady C. Harris, Joseph LeConte Smith,* for plaintiff.

*Jones, Park & Johnston,* for defendant.

LUKE, J.   These two cases turn on the construction to be given the same verdict and the report of an auditor, the verdict having been rendered on exceptions of fact, filed by both plaintiff and defendant, to the report of an auditor in an action at law.

Stewart-Morehead Company sued the Bibb Manufacturing Company for the alleged difference between the contract price and the lower market price of 704 bales of cotton, "fully low middling," at the time and place of delivery, under two contracts, each for the sale of 500 bales, the plaintiff alleging that the defendant refused to accept or pay for a part of the cotton in accordance with the terms of the contract, or to pay the difference between the contract price and the lower market price prevailing at the time for delivery.   The contract declared upon was in writing, but was silent as to the classification to be used in determining the grades of the cotton therein contemplated.   The plaintiff's petition was also silent upon this point.

The Bibb Manufacturing Company answered, admitting the contract as alleged, but denying its breach by the defendant, averring its breach by the plaintiff in several particulars, and seeking to recoup damages from the plaintiff for such alleged breaches on the plaintiff's part.   The defendant further pleaded that the Liverpool classification was contemplated by both contracting parties, and that the contract should be construed accordingly, setting up in detail facts tending to establish defendant's counterclaim under the Liverpool classification.

The case was referred to an auditor; and exceptions of fact to his report, filed by both plaintiff and defendant, were tried together by the same jury, the verdict being seriatim for or against each exception.   There were also certain exceptions to the auditor's findings of law, which do not appear to have been ruled upon by the lower court.   That part of the auditor's findings left of force by the verdict was as follows:

### Findings of fact.

1.   I find that in making the contract sued upon both parties communicated by telegram.

2.   I find that acceptance on each contract was sent from Savannah, hence both contracts were made in Savannah, to be performed in Macon, the time limit of performance being the 15th of February, 1914.

3.  I find that a general custom existed in the cotton trade, that the seller would ship cotton, sending bill of lading with draft attached, so that it was necessary for the purchaser to pay for the cotton before it could be inspected, and that inferior grades, short weights, and other items not in conformity with the contract, were understood to be open to adjustment afterwards.

5.  I find that a local custom existed in Savannah for grading cotton shipped to American mills by the American classification.

6.  I find that a local custom existed in Macon, Georgia, for grading cotton shipped to American mills by the Liverpool classification.

7.  I find that the officers of the plaintiff corporation contemplated, in the contract sued upon, grading cotton by the American classification.

8.  I find that the officers of the defendant corporation contemplated grading cotton, upon the contract sued on, by the Liverpool classification.

9.  I find that neither knew that the other contemplated a different classification.

10.  I find that there was a substantial difference in the grade and price of cotton when classified by the American classification and the Liverpool classification.

11.  I find there was no general custom prevailing in the cotton trade in the Southeastern states, including the State of Georgia, for grading and classifying cotton.

13.  I find that if the place at which the contract was made should determine the classification, American classification would apply; but if the place of performance of the contract should determine the classification, the Liverpool classification would apply.

14.  I find that the defendant committed a breach of the contract by refusing to pay the draft and accepting fifty bales of cotton shipped from Dublin on February 11, 1914.

15.  I find that under contract Nov. 26, 1913, the plaintiff delivered 271 bales, leaving undelivered 229 bales.

16.  I find that under contract Nov. 29, 1913, plaintiff delivered 25 bales, leaving undelivered 475 bales.

17.  I find that, at the expiration of the time limit for performance of the contract, the average price of cotton embraced in the two contracts had declined ¾ of one cent per pound.

18. I find that 50 bales from Dublin were rejected before it developed that each party claimed a different classification.

19. I find that plaintiff is entitled to recover ¾ of one cent per pound for the 50 bales rejected from Dublin, of 500 pounds each, $187.50.

21. I find that, if the plaintiff should be entitled to recover for the balance of the cotton not delivered, the additional amount would be $2,452.50 with interest at 7% since February 15, 1914, less $691.87 allowed defendant in finding No. 20. This finding is made so as to enable the court to render final judgment without referring the case to the auditor, in the event the court should not agree with the auditor's conclusions of law as hereinafter set forth.

### Conclusions of law.

1. I find that the defendant was not authorized to reject cotton furnished under the contracts, for the reason that some cotton in each shipment was inferior to the quality specified in the contract.

2. I find that the defendant is not bound by the local customs in Savannah, Ga., to grade cotton by the American classification, it not appearing that defendant had notice thereof.

3. I find that two conflicting local customs cannot be implied in the same contract.

4. I find that a custom will not be implied as a part of a contract unless it is general, certain, definite and of universal practice.

6. I find judgment in favor of the defendant against the plaintiff for $691.87, with interest from February 15, 1914.

The 4th, 12th, and 20th findings of fact and the 5th conclusion of law, which were eliminated by the verdict of the jury (the 5th conclusion of law being excepted to and otherwise treated in the lower court as a finding of fact), were as follows:

4. I find that the defendant departed from this custom in this particular instance, when the defendant, through E. T. Comer, demanded of the plaintiff strict performance of the contract on January 12, 1914, and from this day on, contract was not subject to the usual custom of adjusting differences after the cotton was paid for and received, but was to be determined by the terms of the contract, by which grade was changed at that time.

12. I find that before the time expired for the performance of the contract sued upon, it developed that the plaintiff offered to

deliver the cotton under the contract upon the American classification and that the defendant refused to accept the cotton under the contract except under Liverpool classification; and that there are no facts appearing in the case which would determine the classification which should control.

20.   I find that the defendant is entitled to recover of plaintiff a rebate for under grade of cotton delivered, $740.80, and for loss in weights, $138.57, total $879.37, less $187.50, net $691.87, with interest at 7% from February 15, 1914.

5.   I find that as each of the parties contemplated grading the cotton by a different local custom, and both were ignorant of the custom contemplated by the other, there was no agreement between the parties as to how the cotton was to be graded, hence no contract was made which could be enforced.

Upon the face of the record as it then stood, after the verdict had been received and the jury discharged, the plaintiff moved for a judgment against the defendant in the sum of $1,760.63, besides interest, the figures being derived from the auditor's 21st finding of fact. Upon the same record the defendant moved for a judgment against the plaintiff in the sum of $691.87, besides interest, these figures being derived from the auditor's 6th conclusion of law. The court denied both motions, disallowing any final judgment as the record then stood, and passed an order reciting that in his opinion "said verdict is inconsistent, contradictory; and meaningless," and ordered that "said verdict be disregarded, held for naught, a mistrial of said case declared, and said case be tried again." To that ruling each party excepts; and each further assigns as error the refusal of the court to grant its motion for a judgment.

The litigants are agreed as to one thing only, namely, that the trial judge erred in setting aside the verdict on his own motion. We agree with the litigants as to this point, and, under all the particular facts of the case, we further think that the court should have rendered the judgment asked for by the plaintiff, to wit, the sum of $1,760.63 with interest at 7% per annum from February 15, 1914, and the costs of the suit.

The defendant's contention, made for the first time after the trial of the case, that no valid, enforcible contract had been made by the parties, is without merit, since, under the pleadings in the

case and the admissions of counsel for the defendant during the trial, the defendant is estopped from now setting up such a defense, and a finding that the contract was valid and binding was demanded.

Under the auditor's finding of fact, which was sustained by the jury, the defendant breached the contract by refusing to pay the draft and to accept the fifty bales of cotton which were shipped from Dublin on February 11, 1914.

The defendant's contention that it was excused for its breach of the contract by reason of the fact that some of the cotton shipped to it was below the grade at which it was billed, and that, "as a matter of law, a party has a right to refuse to accept further deliveries under an entire contract when the partial deliveries thereunder fail to measure up to the standard stipulated for in the contract," was denied by the auditor, as he found that there is a general custom in the cotton trade, where the seller ships cotton c. o. d., that differences as to weights, grades, etc. are "understood to be open for adjustment afterwards." The auditor's further finding that that custom had been departed from in this case was found against by the jury. So it stands as an established fact in this case that throughout the transactions between the parties "the contract was subject to the usual custom of adjusting differences after the cotton was paid for and received." The auditor's conclusion of law as to this point was correct. See, in this connection, *Henderson Elevator Co.* v. *North Georgia Milling Co.,* 126 *Ga.* 279 (55 S. E. 50) ; *Miller* v. *Moore,* 83 *Ga.* 684 (4) (10 S. E. 360, 6 L. R. A. 374, 20 Am. St. R. 329) ; *Acme Brewing Co.* v. *Rahr Sons Co.,* 10 *Ga. App.* 564 (73 S. E. 955).

When the defendant breached the contract it became liable for the entire damages caused by its failure to live up to the contract. The defendant having wrongfully refused to accept the fifty bales of cotton from Dublin, it was not incumbent upon the plaintiff to ship any more. Civil Code (1910), § 4131; *Branch* v. *Palmer,* 65 *Ga.* 210 (3) ; *Standard Coal Co.* v. *Eclipse Coal Co.,* 24 *Ga. App.* 717 (102 S. E. 137).

As to the question of classification, Liverpool or American, the auditor's finding of fact, that "before the time expired for the performance of the contract sued upon, it developed that the plaintiff offered to deliver the cotton under the contract upon the American

classification, and that the defendant refused to accept the cotton under the contract except upon Liverpool classification; and that there are no facts appearing in the case which would determine the classification which should control," was reversed by the finding of the jury. This verdict virtually eliminated the classification question from the case.

As said before, we think the plaintiff was entitled to the judgment asked for.

The judgment is reversed, with direction that the court render a judgment in favor of the plaintiff for $1,760.63, with interest at 7% annually from February 15, 1914, and the costs of suit.

*Judgment reversed, with direction. Broyles, C. J., and Bloodworth, J., concur.*