No. 68.—Elam Alexander, plaintiff in error, *vs.* Hiram B.
Troutman, defendant in error.

In a suit upon a note payable upon time, *with interest from date, if not punctually
paid*, the *back interest* is recoverable as stipulated damages.

If, in the entering up of the judgment, such *back interest* be not computed, the judg-
ment may be afterwards amended, under an order of the court, so as to include *the
interest from the date*; and the collection of it may be enforced, though the original
execution had issued and been returned satisfied.

The defendant in error instituted suit in Bibb Superior Court, against
the plaintiff in error, upon a note, of which the following is a copy:
" $1,800. On the 25th December next, I promise to pay H. B. Troutman,
or bearer, eighteen hundred dollars for value received, *and if not punctu-
ally paid, interest from date*, Jan. 10th, 1842, Elam Alexander;" which
note was credited with one hundred dollars.

At the trial term, judgment was confessed by counsel for the plaintiff
in error for seventeen hundred dollars, with interest and costs of suit; and
final judgment was thereupon entered up and signed for the principal,
together with the interest computed from the maturity of the note, omit-
ting the *back interest*. From this judgment, execution was issued and
returned into court satisfied.

At May term, 1846, of the court below, Judge Floyd presiding, Messrs. Poe
and Nisbet, counsel for the defendant in error, moved to open and amend the
judgment by computing and including therein the *back interest*, which had
been omitted in the original judgment. Stubbs, of counsel for the plain-
tiff in error, objected, which was overruled by the court below, and the
counsel for the defendant in error were permitted by the court to amend
the said original judgment. To which the counsel for the plaintiff in
error excepted upon several grounds, the substance of which is stated in
the opinion delivered by the Supreme Court, to which the reader is
referred.

T. P. Stubbs, for the plaintiff in error.

A bill single, payable at a future day, with interest from date, if not punctually
paid, the interest from date to maturity is a *penalty*, and not recoverable.—*Dins-
more* vs. *Hand*, 1 *Ala. Rep.* 126, decided in 1823.

A note payable at a future day, with interest from date, if not punctually paid,
carries *interest* only from its *maturity*.—*Fugua and Hewitt* vs.*Carriel and Martin*,
1 *Ala. Rep.* 123, 170. This case is precisely parallel with the one now before
the court.

After judgment was entered up for principal, and interest from maturity, at a
subsequent term, the plaintiff's counsel moved to open the judgment, and count
the back interest, which the circuit judge, as in this case, permitted. The Supreme
Court corrected the error, and held that the back interest was a penalty, and could
not be collected.

In a bond or note to pay a certain sum at a future day, with interest from date,
at 5 per cent. a month, if not punctually paid, the contract for interest from date is
a penalty. Only interest from maturity is recoverable.

A mortgage is made with interest at £5 per cent.; provided, that if the interest is
not paid two months after due, then to pay £5 10s.—this is in the nature of

a penalty, and the court will relieve against it; otherwise, if £5 10s. be reserved originally; and to be lessened to £5 per cent., if duly paid in two months after due.—*Strode* vs. *Parker*, 2 *Vernon*, and cases there cited; 2 *Vernon*, 289; 3 *Atk.* 519; 3 *Burrow*, 1374; 3 *Blk. Com.* 432; *Prec. in Chancery*, 160; 1 *P. Wms.* 652.

The plaintiff lent the defendant money on mortgage at £5 per cent. interest, but if not punctually paid, then to answer interest at £6 per cent. per annum. There being a great arrear of interest, the question was, whether it should be computed after the rate of £5 or £6 per cent.; decreed, the defendant pay but £5 per cent., and the court looked upon the reservation of £6 per cent. but as a nominal *pœna* to oblige the defendant to more punctual payment.—*Holles* vs. *Wyse*, 2 *Vernon*, 289. Overruling a *dictum* in Lord Halifax's case, and the decision then made, adhered to in England uninterruptedly.

A mortgage with interest at 5 per cent., and a condition to take 4, if regularly paid, or at 4 per cent. with a condition to take 5, if not regularly paid. At law you might recover the 5 per cent, for it is the legal interest. But equity regards the 5 per cent. as a penalty, for securing the 4. Equity relieved against a penalty, long before a court of law.—*Seton* vs. *Slade*, and *Hunter* vs. *Seton*, 7 *Ves.* 274.

Where interest reserved was 4 per cent., a subsequent condition for 5 per cent., if the payment was not regular, would plainly be a penalty; but where the reservation was at 5 per cent., an agreement by a subsequent clause, to accept 4, if that was regularly offered would hardly give the character of a penalty to the first stipulation. There seems to be a material difference between an original agreement and a superadded condition.—See note to *Seton* vs. *Slade*, 7 *Ves. Jr.* 279.

The true foundation of the relief in this and all such cases is, that as the penalty is designed as a mere security, if the party obtains his money, or his damages, he gets all that he expected, and all that justice requires.

And, notwithstanding the objections which have been urged against it, this seems a sufficient foundation. In reason, in conscience, and natural equity, there is no ground to say that, because a man has stipulated for a penalty, in case of his omission to do a particular act, (the real object of the parties being the performance of the act,) if he omits to do the act, he shall suffer an enormous loss, wholly disproportioned to the injury.

If it be said, it is his own folly to have made such a stipulation, it may equally well be said, that the folly of one man cannot authorize gross oppression on the ther side. And law, as a science, would be unworthy the name, if it did not provide means, to some extent, of preventing the mischief of improvidence, rashness and credulity on one side, and of skill, avarice, and gross violation of the principles of morals and conscience on the other.

Where a penalty or forfeiture is designed, merely as a security to enforce the principal obligation, it is as much against conscience to allow a party to pervert it to a different and oppressive purpose, as it would be to substitute it for the principal obligation.—*Story's Eq. Jur.* 547, 548, and note; *Newland on Con.* chap. 17, p. 307 to 311.

Courts of common law have concurrent jurisdiction in relieving against penalties, where compensation can be made.—See leading case, *Astley* vs. *Francis Welden*, 2 *Bos. and Pul.* 346. The jurisdiction of courts of equity, in relieving against penalties, is of very high antiquity.

The Legislature has now adopted this practice, (says Chambre, J.,) and affords the same benefits to defendants in actions at law; and it has lately been settled, that it is not matter of election to proceed under the statute, but that the directions are compulsory and must be pursued.

The same learned judge in the same case says: There is one case in which the sum agreed for must always be considered as a penalty; and that is, where the payment of a smaller sum is secured by a larger. The statute 8 and 9 *Wm.* 3, ch. 11, sec. 8, is a remedial statute passed for the benefit of defendants, and has been construed to extend to actions on any penal sum for non-performance of contracts, non-payment of money, &c.—See *Roles* vs. *Rosewell*, 5 *Term Rep.*, 535, 538.

Lord Mansfield said: It is surprising that after the statute of usury, (37 *Hen.* 8,)

Alexander *vs.* Troutman.

which excepts obligations, with condition made upon just and true intent, the courts of law did not consider the just intent of a bond to be principal, interest and costs secured by a penalty, and suffer the party at any time to save the forfeiture by performing the intent. It is more extraordinary that, after this was settled in a court of equity to be the nature of a bond, and therefore every party to a bond understood it in this sense, the courts of law did not follow equity, but still continued to do injustice as of course, and put the parties to the delay and expense of setting it right elsewhere as of course.

The act of Parliament meant, that, in case of penalties by way of security, the clear, final justice of the case, should be obtained in courts of law, much to the benefit of both parties.

This act of Parliament (says Lord Mansfield) reforms, in some instances, an erroneous course of proceedings in the courts of law and equity, which ought never to have prevailed, and which the courts themselves might and ought to have remedied, but did not. Therefore it should not only have the most liberal construction, but the courts ought to exercise their own authority to extend the spirit and reason of the act, for the speedier, easier and better advancement of justice to cases not mentioned in the act.—*Bonafous* vs. *Rybot*, 3 *Burrows*, 1373–4.

The Supreme Court of Alabama, in delivering the opinion of the court in a case precisely like the present, where the back interest was sought, said : " We cannot suppose it necessary, at this day, to offer argument or authority to prove, that that which in its nature and character, and according to settled legal principles, is a penalty, must not be so considered, because it is *called interest* in the note. It is immaterial by what name the parties call it—the settled principles for the construction of contracts must determine its true character.—*Sumston* vs. *Thomson*, 1 *Ala. Rep.* 233.

A penalty is an agreement to pay a greater sum, to secure the payment of a less sum. It is a condition, and can be avoided by the payment of the less sum, before the contingency agreed upon shall happen. It is immaterial by what name it is called. If it accrues in a gross amount on the maturity of the note, it is a penalty, and not interest. The nature of interest is absolute, and unconditional, to run on a debt due, and withheld.—*Winston* vs. *Thompson*, 1 *Ala. R.* 227, decided in 1824.

In a case like the present, where the bill was payable 365 days after sight, and a bond and security given for the prompt payment, with the condition that the obligors in the bond would, if the bill was returned protested, pay the principal thereof, together with interest thereupon of £5 per cent. from the date of such bill till paid. Lord Loughborough, who delivered the opinion of the court, said : " I do not go on the denomination given by the instrument, for whatever that may be, in this case, that could not by possibility have been an agreement for liquidated damages, which can only be where there is an engagement for the performance of certain acts, the not doing of which would be an injury to one of the parties, or to guard against the performance of acts which, if done, would also be injurious.—*Orr* vs. *Churchill*, 1 *H. Blackstone*, 227, cited in 2 *Comyn on Con.* 547.

C. J. McDONALD, representing Messrs. POE and NISBET, for the defendant in error.

*By the Court*—NISBET, Judge.

The several assignments of error in this cause, resolve themselves into one question, and that is, is the agreement upon the face of this paper to pay interest from date, if the principal sum is not punctually paid at its maturity, in the nature of a penalty ? or is it an undertaking to pay the back interest as damages ? The court below decided it to be an undertaking to pay the back interest as damages, for a failure to pay the principal sum at the maturity of the note. Upon this decision, the plaintiff in error brings this cause up. If this back interest is stipulated damages, then the plaintiff below was entitled to recover it,—if a penalty, he is

entitled under the contract to recover whatever, in the proper form of action, he could prove to be the quantum of his injury.    The parties do not call it either the one or the other—if they did, the name they gave to it would not change its nature.    That is settled by the authorities.—*Story's Eq.*, sec. 1318.    The amount in this case is liquidated, whether it be penalty or damage; for the agreement is, in case of non-payment punctually, then to pay " interest from date"—that is, the interest which the law allows, to be computed from the date of the note.

By referring to the note, and to the law of the State, prescribing the rate of interest, the amount will be ascertained, *id certum est quod certum reddi potest.*    One thing is very clear—that is, that neither the courts of Great Britain, nor of our Union, have established any rule, by which it can always with certainty be determined, what is a penalty, and what liquidated damages.    We shall, of course, undertake to establish none. It is settled by the later cases, that, in order to ascertain whether the sum specified in the agreement is to be considered a penalty or liquidated damages, the court must look to the whole of the agreement, and unless it clearly appear thereby to have been intended by the parties as liquidated damages, it will be considered as a penalty only.—*Tidd's Practice,* 877 ; 6 *Barn. and Cres.* 216 ; 11 *Mass. Rep.* 81.    In commenting on this subject, Mr. Justice Story remarks : " But we are carefully to distinguish between cases of penalties strictly so called, and cases of liquidated damages.    The *latter* properly occur, where the parties have agreed, that, in case one party shall do a stipulated act, or omit to do it, the other party shall receive a certain sum, as the just, appropriate, and conventional amount of the damages sustained by such act or omission.    In cases of this sort, courts of equity will not interfere to grant relief, but deem the parties entitled to fix their own measure of damages, *provided* always, that the damages do not assume the character of *gross extravagance*, or of wanton or unreasonable disproportion to the nature or extent of the injury."—*Story's Eq. Juris.* sec. 1318 ; *Eden on Injunctions*, 41.

Upon a careful review of the authorities, we are prepared to say, that this extract affords the best general rule upon a question of no little complexity.    We do not see why its application may not in most cases determine what is a penalty, and what damage.    Its application relieves us from doubt as to what is the law of the case before us.    It is a safe general rule, not to interfere with the contract which parties have thought proper to make ; it is the business of courts of justice, not to make, but to enforce contracts.    If the meaning of the parties is reasonably plain, then courts will not be astute to find out a different meaning.    The parties in this case, and in all others of like character, have the unquestionable right to fix their own measure of damages.    They are presumed to know, better than a jury could determine for them, what injury would result from any given act or omission.    And if the parties have made their contract, and it is not in contravention of the law, let it even be conceded to be unreasonable ; it is right to compel them to abide it.    In *Lowe* vs. *Peers,* (*Burrow,* 2229,) Lord Mansfield sustains these general views in these words: " When the precise sum is fixed and agreed upon between the parties, *that very sum* is the ascertained damages, and the jury is confined to it."    In that case Peers had in writing bound himself to marry Mrs. Lowe, and in default, to pay her 1000 pounds.    This was held to be a

case of damages. A reason for abiding the damages which the parties have agreed upon, is found in the difficulty which a jury would find, in many cases, of ascertaining the amount of injury sustained.—6 *Bing.* 141. In the case we are now determining, we know of but one criterion which the jury would have, by which to fix the damages which the payee sustained, and that is the very one by which the parties themselves ascertained them, to wit, the legal rate of interest on the money. How unnecessary in such a case to go to a jury, simply to affirm the contract of the parties.

So one, in consideration of one dollar, agreed by deed not to run a stage on a specified road, under a penalty of $290. The penalty named was ruled damages.—8 *Mass.* 222.

So a creditor grants indulgence for two years, and covenants that he will not sue, under penalty of a forfeiture of the debt. Held to be damages.—4 *Mass.* 433.

The reader is referred to the following cases, determined to be damages.—*Ponsonby* vs. *Adams*, 9 *Bro. P. C.* 417; *Roy* vs. *Duke of Beaufort*, 2 *Atk.* 199; *Lowe* vs. *Peers*, 4 *Burrow's Rep.* 2229; *Fletcher* vs. *Dyche*, 2 *T. R.* 52; *Barton* vs. *Glover*, 1 *Holt.* 43; *Christie* vs. *Bolton*, 3 *B. & C.* 280; 3 *Taunton*, 469; 3 *B. & H.* 692; 8 *Moore*, 244; 1 *Bing.* 302.

On the other hand, it may be considered as settled, that where a larger sum is stipulated to be paid, in order to secure the prompt payment of a lesser, it is a case of penalty.—2 *Bos. & Pul.* 346. So, too, where a specified sum is agreed upon, to cover different breaches, and would be in some cases too large, and in others too small, that is a case of penalty.— 6 *Barn. & Cres.* 216.

In all cases where the damages are excessive, they are held to be penalty.—*Story's Eq.* sec. 1318. Such was the case read from Alabama, determined by the Supreme Court of that State. There the back interest reserved, ranged from two and a half to ten per cent. per month. As to what are cases of penalty, see 1 *Bro. C. C.* 418; 1 *Cox*, 26; 2 *Bos. & Pul.* 346; 3 *B. & P.* 630; 13 *East*, 348; 1 *Camp.* 78; 3 *Burrow*, 1374; 1 *H. Black.* 227; 2 *Vernon*, 315; 1 *Ala. Rep.* 170; 1 *ib.* 170; 1 *ib.* 209; 11 *Mass.* 76. Scarcely any two cases upon this subject are to be found alike, illustrating the difficulty of determining the case before us, upon authority. Believing this to be impossible, we shall decide it upon the general principles laid down by Mr. Story, and to them we again revert, premising that this is not a case where a small sum is secured by a larger, nor a case where one penalty is made to cover different breaches of various importance.

According to Story, cases of liquidated damages occur, when the parties have agreed, that in case one party shall do, or omit to do, a stipulated act, the other shall receive a *certain sum.* Now, it is upon this note agreed, that if the maker shall omit to pay the principal of the debt at its maturity, the other party, to wit, the payee, shall receive interest upon that sum from its date; that is, the interest fixed by law for a given period upon a given sum. The sum is therefore *agreed to be paid, and it is a certain sum;* and it is to be paid if the maker *omit* to do a *stipulated act.*

Further, this sum is to be paid as a *just, appropriate* and *conventional* amount of the damages sustained by the omission. This back interest is the *conventional* amount of the damages, because it is the amount agreed upon between the parties. It is *appropriate* in this, that it is the rate of interest which the law itself has ascertained as the value of money. And its *justness* will appear from the following considerations: One taking a note upon time, is reasonably presumed to make his monetary arrangements upon the faith of prompt payment, and if he is not promptly paid, it is a fair presumption that his own affairs are thereby deranged, and he himself damnified. The amount of that injury will be different, of course, according to the circumstances of each case ; but we can reason only according to the operation of general rules. We suppose, then, that if his debt is promptly paid, the advantage to him will be equal to the legal interest on the amount, for the time his debtor has had the use of his money, or its equivalent in property. If not promptly paid, the corresponding injury will be equal to the interest for the time. The benefits of these contracts upon time, contrary to the received opinion, according to the legal view of them, are reciprocal. When A sells property, or lends his money to B, and takes his note at twelve months, the possession of the property or the money passing at the time to B, the legal inference is, that the price of the property or of the money is enhanced by the interest on the cash price of the property, or the actual sum loaned, for twelve months. This interest is added in the note. Now, if there be a stipulation, that in case of non-payment at maturity, the note shall bear interest from date, and it is not paid, and the back interest is collected, the common opinion is, that A in the above case realizes sixteen per cent. upon this contract, to wit, eight per cent. originally added into the note, in consideration of time, and eight per cent. of the back interest. But is this true? It is true that he does, in fact, receive sixteen per cent., but eight per cent. of that interest is offsetted by the use of the property, or the money in the hands of B ; the use being worth eight per cent. to him. The consequence is, that, in cases where the damages thus stipulated to be paid do not exceed eight per cent., the payee realized only eight per cent upon his money, or the price of his property. Then the result of such a contract as the one before us enforced, is, that the payee gets eight per cent., the lawful interest upon money. Now, is such amount otherwise than just? We think not. And if just, it is not grossly *extravagant* or *wanton,* or *unreasonably disproportioned* to the injury.

We know that, in point of fact, the giving of time does often enhance the price of property or money, far beyond eight cent., as stated. But how can we judicially know that to be the case here? We reason from the record. The reasonableness and justness of the damages in this case might be variously illustrated. We refer only to the instance of administrators, whose notes are taken at twelve months, and very often with the condition found in this note. It is of serious importance to the estate which he represents, that the debts thus contracted be promptly paid. At the expiration of twelve months, he is liable, not only to be called upon, but to be sued, if the estate which he represents, which is very generally the case, has no resources to pay debts, but the proceeds of the sale ; and the debts contracted on account of the sale are not promptly met ; then he

is put to great inconvenience, and the estate of his intestate injured. He is compelled, perhaps, to borrow money, at exorbitant rates ; to submit to be sued and pay costs, or to sue upon the notes in his hands, and pay commissions for collecting. In his case, eight per cent. for twelve months cannot be considered unjust or excessive damages.

We affirm the judgment of the court below.