## 7786.  WILLIAMS MANUFACTURING COMPANY v. SCHOFIELD'S SONS COMPANY.

1. Where a foundry enters into a contract with a manufacturer of a patented hay-press to furnish 500 sets of hay-press castings, and in the contract is a clause in which the foundry agrees to "furnish properly all castings needed by the undersigned [the manufacturer of the hay-press], whether of the exact pattern now used or not," this clause is not a warranty of "the particular goods to be furnished, both as to kind and quality."

2. While the damages complained of in this case could possibly be traced to the defects in the castings, they were remote and consequential, and not the natural consequence of a breach of the contract, and were not such damages as the parties contemplated at the time the contract was made, as a probable result of its breach.

3. There was no error harmful to the defendant in the failure of the judge to change the date of the order on the demurrer from the 6th to the 7th of July.

4. There is no law which allows costs to be taxed against the defendant in error for a portion of the record which is made a part thereof at the suggestion of the presiding judge.

DECIDED SEPTEMBER 19, 1917.

Complaint; from city court of Macon—Judge Guerry.  July 8, 1916.

J. S. Schofield's Sons Company sued Williams Manufacturing Company for $366.75, on an account, the first item of which was dated October 2, 1912, and the last dated November 30, 1912. Practically the entire account was for castings. Williams Manufacturing Company filed a plea in which was set up the course of dealing for several years between the parties, consisting in the manufacture of castings for a hay-press, and that the Williams Manufacturing Company owned a patent right granted by the United States, which gave the Williams Manufacturing Company the exclusive right to make and sell the hay-press, and further alleging that they furnished to the plaintiff a particular kind of pattern used for the purpose of making the chilled castings; that owing to the friction in the operation of certain described parts, to prevent wear, it was necessary that these parts should be very hard, and for this reason the defendant furnished the pattern necessary to make this particular kind of casting; also that, owing to the course of dealing for several years, it was fully understood between the parties that these particular parts should be chilled, and that the plaintiff had been making these parts of the

necessary quality for several years, until about May, 1912, when the plaintiff furnished the defendant a large lot of castings of a very inferior quality, and so soft as to be absolutely useless in the operation of the hay-press, for the reason that they would wear out in a few hours, whereas, when properly made, they would last from seven to eight years; and that notwithstanding that the plaintiff knew at the time it furnished these castings that they were soft and unfit for the use intended, no notice of their quality was given to the defendant. Attached to the plea was a copy of the contract between the parties, as follows: "Macon, Ga., Mar. 9, 1912. J. S. Schofield Sons Co. agree to make five (500) sets of hay-press castings at two cents per pound, for the Williams Manufacturing Company. Settlement by note on the 5th of each month. Due November 10. It is agreed that all orders for parts of sets during this year will be furnished and billed at the above prices and terms, and further that parts for power press as heretofore furnished will be made at the above price. Said Schofield Sons agree to furnish properly all castings needed by the undersigned, whether of the exact pattern now used or not. Said Schofield Co. agree to keep pattern in good repair at their own expense. Said Schofield Sons agree to replace free of charge all defective castings furnished by them." In the original plea it was alleged that by reason of the fact that the defendant was ignorant of the inferior quality, it had equipped presses with these parts and shipped them through a large territory, and was unable to designate which presses these parts were used upon until complaints were made, and for that reason asked leave to amend their plea later. On July 5, 1916, the defendant filed an amendment to its plea, exhibiting a list of items and expenses amounting to $1,339.89. Immediately upon offer of this amendment the plaintiff demurred to both the original plea and the amendment, as follows: "Plaintiff demurs to the plea and answer of the defendant as amended, on the following grounds: 1. Because the same sets out no defense to plaintiff's petition, and is not good as a plea of recoupment or set-off. 2. Because the damages sought to be recovered are too remote and can not be traced solely to the alleged breach of the contract, and are not capable of exact computation, and are speculative in their nature. 3. It specially demurs to so much of said plea and answer as amended as seeks to

recover expenses incurred, because said expenses do not appear to have been necessary expenses incurred in complying with the contract, but were expenses incurred by the defendant in the conduct of its business independent of the contract. 4. Because by the express terms of the contract relied upon by the defendant, plaintiff's warranty was to replace, free, all defective castings; and the contract therefore excluded the recovery of damages for defective castings accepted and used by the defendant. 5. Specially to so much of the plea and answer as amended as seeks to recover for injury to defendant's business and for loss of trade and business, because such damages are remote and speculative and not capable of exact computation and can not be traced solely to the alleged breach of the contract. 6. Specially to so much of said plea and answer as amended as seeks to recover damages for injury to trade and business, because it does not appear specifically or definitely how or wherein defendant was injured. 7. Specially to so much of the amended plea and answer as seeks to recover expenses, salary, and price on account of hay-presses shipped to Laurenburg and Augusta, because the said damages are not itemized and no bill of particulars is attached. 8. Specially to so much of the amended plea and answer as seeks to recover damages for loss of hay-presses shipped to Parlin & Orendorff Company, because the damages are not itemized and no bill of particulars is attached showing the items therefor." (Paragraphs 9 and 10 of the demurrer are the same as paragraph 8 except as to the parties and places to which the presses were delivered.) "11. Specially so much of said amended plea and answer as seeks to recover damages upon resale of hay-presses shipped to Winnewood, Oklahoma, because the damages are not itemized, and it is not shown when, where, or to whom said resales were made, or that the plaintiff was notified of the time and place of resale, and because said damages are not recoverable, defendant not establishing by its plea and answer a proper measure of damages. 12. Specially to so much of said amended plea and answer as sets up the loss of sales, because it is not shown what sales were lost, or to whom, or when, or how, or wherein plaintiff was responsible for such loss of sales, and because such damages especially are speculative and are not the direct result of the alleged breach of the contract or within contemplation of the parties when said contract was made."

The demurrer was sustained on each and all the grounds thereof. Additional pleas were filed, but need not be considered here. The trial resulted in a verdict for the plaintiff, for $187.00, principal, and $46.95, interest.

*L. D. Moore,* for plaintiff in error.

*Hardeman, Jones, Park & Johnston,* contra.

BLOODWORTH, J. (After stating the foregoing facts.)

1. In the bill of exceptions it is alleged that the court erred in sustaining the demurrer to the plea, and that this error "was controlling and affected the final result of the case, and that the court erred in permitting said verdict to be rendered and said judgment to be entered." There is no exception to the charge of the court, no allegation of error in admitting or rejecting evidence, and no contention that the evidence is insufficient to support the verdict. The only question, therefore, for us to determine is whether the court erred in sustaining the demurrer. Counsel for plaintiff in error insists that in the following clause of the contract, to wit: "Said Schofield Sons agree to furnish properly all castings needed by the undersigned, whether of the exact pattern now used or not," the word "properly" being descriptive of the subject-matter, this clause was a warranty of "the particular goods to be furnished, both as to kind and quality." In this we can not agree with learned counsel. It occurs to us that though the word "properly" appears in the contract, it was not the word originally intended, but that it should have been "promptly." However, we must deal with the words of the contract as we find them. The word "properly" in this sentence is not descriptive of the subject-matter of the contract,—the 500 sets of hay-press castings,—but refers to the word "furnish," immediately preceding it. Whatever the words "furnish properly" may mean, certain it is that the clause in which they occur can not be considered as a warranty of the "particular goods to be furnished, both as to kind and quality." The words descriptive of the property sold were not the words in this clause of the contract, but the words in the first clause thereof, to wit: "500 sets of hay-press castings." Here is a contract without express warranty, for the sale of 500 sets of hay-press castings; and, if such castings were delivered and accepted, this was a waiver of all defects which by ordinary care and prudence might have been discovered before delivery. If any cast-

ings were defective, the contract itself, in the clause, "Said Schofield Sons agree to replace free of charge all defective castings furnished by them," provides the remedy contemplated by the parties. See *Bond* v. *Perrin,* 145 *Ga.* 200 (88 S. E. 954). "When a known, described, and definite article is ordered of a manufacturer, although it be stated by the purchaser that it is required for a particular purpose, yet if the known, described, and definite thing, which is of the kind and quality called for by the order, be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." *Fay & Eagan Co.* v. *Dudley,* 129 *Ga.* 314 (58 S. E. 826); *City of Moultrie* v. *Schofield's Sons Co.,* 6 *Ga. App.* 464 (2) (65 S. E. 315). There is nothing in the contract under consideration to show that any part of the castings were to be hard chilled, and no warranty to show that they would answer the particular purposes intended by the buyer. "In a contract for the sale of goods, words of description of the subject matter of the sale are ordinarily to be regarded as simply a warranty that the goods delivered shall be of the character described in the contract." *Fay & Eagan Co.* v. *Dudley,* supra; *Henderson Elevator Co.* v. *North Ga. Milling Co.,* 126 *Ga.* 279 (55 S. E. 50).

2. Under the express terms of the contract, if the plaintiff furnished the defendant with defective castings, the defendant could secure good ones by applying to the plaintiff, and this would settle the question and cure the breach. But the defendant alleges that the defects were latent, that it did not know of them until complaints reached it from customers, and then the damage had been done. Its plea is based upon this idea. While the damages complained of could possibly be traced to the defects in the castings, they were remote and consequential, and not the natural consequence of a breach of the contract; and surely they were not such damages as the parties to the contract contemplated at the time the contract was made, as the probable result of its breach. In Tompkins *v.* Monticello Cotton Oil Co., 153 Fed. 817, Speer, District Judge, said: "Now, the object of damages is compensation, and it is a general rule that the party committing the breach is liable only for such losses as would naturally and probably be in the contemplation of the parties at the time of making the contract. In other words, the parties would not be held liable for contingent damages which they could not anticipate as reasonably

and probably resulting for [from?] the breach at the time they made the contract, after weighing its facts and conditions." Under our view of the case, sections 4394 and 4395 of the Civil Code of 1910 settle the proposition adversely to the plaintiff in error, and demand a ruling sustaining the demurrer. *Thornton* v. *Cordell,* 8 *Ga. App.* 588 (70 S. E. 17) ; *Ralph T. Birdsey Co.* v. *Porter,* 18 *Ga. App.* 391, 392 (3) (89 S. E. 435) ; *Findlay Brick Co.* v. *American Sewer Pipe Co.,* 18 *Ga. App.* 466 (89 S. E. 535) ; *Water Lot Co.* v. *Leonard,* 30 *Ga.* 560, 577 ; *Willingham* v. *Hooven,* 74 *Ga.* 234 (58 Am. R. 435) ; *Seaboard Air-Line Ry.* v. *Harris,* 121 *Ga.* 707 (49 S. E. 703) ; Tompkins *v.* Monticello Cotton Oil Co., supra.

3. In the bill of exceptions it is alleged that the court erred in not changing the date of the order on the demurrer from the 6th to the 7th of July. It appears from the record that on the 6th day of July the judge signed an order in which the demurrer was "overruled," but on the next day decided that the demurrer should be sustained, and, as the original order had not been recorded, the word "overruled" was stricken and the word "sustained" inserted in lieu thereof, but the date was not changed. This appears in an explanatory note of the trial judge. It does not appear that the failure to change the date affected the rights of the plaintiff in error, and this alleged error is not referred to in its brief.

4. It appears that when the bill of exceptions was presented to the presiding judge he requested the plaintiff in error to specify as a part of the record certain additions to the plea. Relatively to the time of filing the demurrer, the record is not clear as to the time of filing these additional pleas, but it does appear that the demurrer did not refer to them. As the whole case here is determined by the ruling on the demurrer, it was unnecessary to add to the record these additional pleas. Counsel for plaintiff in error requests that the cost of incorporating these additional pleas in the record be taxed against the defendant in error. There is no law which allows such costs to be taxed against the defendant in error when a portion of the record is made a part thereof at the suggestion of the presiding judge.

5. The court having properly sustained the demurrer to the original plea, and to the amendment of July 5, the trial having

proceeded under the amendment to the plea of July 7, and nothing appearing to show that the judgment was erroneous, it must be

Affirmed. *Broyles, P. J., and Jenkins, J., concur.*