**CAMILLA COTTON OIL COMPANY and George M. Perry, Sr., Appellants,**

v.

**SPENCER KELLOGG AND SONS, Inc.,**
Appellee.

No. 17024.

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

R. Lamar Moore, Waldo DeLoache, Moore, Gibson, DeLoache & Gardner, Moultrie, Ga., for Camilla Cotton Oil Co. and George M. Perry, Sr., appellants.

Hoyt H. Whelchel, Jr., Hoyt H. Whelchel, Whelchel & Whelchel, Moultrie, Ga., for Spencer Kellogg and Sons, Inc., appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal began as a suit on a promissory note executed by Camilla Cotton Oil Company and endorsed personally by its president, George M. Perry, payable to Spencer Kellogg covering a portion [1] of the purchase price of two used cotton seed oil expellers bought by Camilla from Spencer Kellogg under a conditional sale contract. In its original complaint, Spencer Kellogg sought interest, late charges and attorneys' fees as provided in the note.[2] In answer to the complaint,

1. The total purchase price for the two machines was $20,500. Camilla paid $7,500 in cash giving this note in the amount of $13,975 ($13,000 balance due and $975 in interest—5% per annum) for the remainder to be paid in two equal installments of $6,987.50, due on June 1, 1955 and June 1, 1956.

2. "For Value Received I Promise to Pay To The Order of Spencer Kellogg And Sons, Inc. the sum of * * * ($13,975) in installments as outlined below with interest from maturity at eight per cent per annum until paid with all costs of collection, including fifteen per cent attorney's fees, if collected by law or through an attorney at law. If for any reason any of said payments are not made promptly on the date due, a late charge of 5¢ per $1.00 of the payment in default will be made and shall be added to the annual payment when paid and the payee or holder may at its option call the entire loan due and payable should any payment be past due for a period of ten days or more."

Camilla interposed defenses of breach of contract and usury and counterclaimed for the expenses ($2,917.49) for parts and labor incurred in putting the allegedly defective machines into proper operating condition and for the increased cost of the actual production in terms of fuel, labor, and electrical power, because of defects in the machines during the rehabilitation period. This latter was the so-called Sixth Defense and in final form comprised the items specified in note 5, infra.

On January 17, 1957, Spencer Kellogg moved that Camilla be required to file a more definite statement as to its Sixth Defense counterclaim for damages arising out of the retarded operation of the expellers because there were no particulars alleged as to which of the machines the alleged expenditures or losses were attributable, and Camilla had alleged that one machine was wholly worthless while the other was only defective. This motion was finally granted in the Court's order of September 23, 1957, requiring that a more definite statement be filed within five days. In the interim, on September 3, 1957, Camilla attempted to amend its counterclaim to include a Seventh Defense alleging damages suffered through loss of profits because of the alleged breach of contract by Spencer Kellogg.[3] This amendment was vigorously opposed by Spencer Kellogg on the ground that depositions had been taken and other trial preparations made on the basis of the prior pleadings, and that there was no opportunity to prepare for trial which was then imminent at the forthcoming October trial term. In its order of September 23, the Court struck this Seventh Defensive claim as coming too late since it would require further continuance of a cause already two years old[4] and also because the damages claimed were too remote and speculative to be recoverable.

At this point, on September 23, 1957, Spencer Kellogg served notice that it intended to take the deposition of Mr. Perry, Camilla's president, setting the date as September 27. On September 24, Mr. Perry moved that he be excused from oral examination because of his health. This motion was supported by a certificate from a physician attesting to Mr. Perry's cardiac condition and stating that he was in no condition to undergo the emotional stress of a court appearance or similar situation. After a consideration of this certificate and one from another doctor given for the purpose of obtaining a continuance of the case the preceding February, both of which discussed the fact of Mr. Perry's acknowledged severe cardiac attack, the Court denied Mr. Perry's motion but ordered that his deposition be taken after that of T. B. Twitty, Jr., another officer of Camilla, and then only if necessary in preparation for trial. The Court also expressed confidence in counsel for both sides to proceed with due consideration of Mr. Perry's welfare, especially since one of plaintiff's counsel had recently undergone, and fully appreciated, a serious cardiac damage which, no doubt, Mr. Perry had suffered.

When the time set for taking these depositions arrived, Mr. Perry did not appear because of his and his counsel's concern over his health, and counsel for Spencer Kellogg refused to examine Mr. Twitty because he was no longer an officer of Camilla and counsel felt that to

3. The crucial portion of the contract read:
 "Seller [Spencer Kellogg] sells to Purchaser [Camilla] and Purchaser hereby purchases from Seller upon the terms below, the following described property, which has been examined and is accepted in its present condition:

 "2—V.D. Anderson Super duo expellers * * *. Machines will be set up for cotton seed operation at not less than 38 tons per 24 hours and will be cleaned and reconditioned so that they will be delivered in good operating condition * * *

 "* * * No representations or warranties of any sort, express or implied, except warranty of title, have been made by Seller unless indorsed hereon in writing."

4. The original complaint was filed December 9, 1955.

take his testimony, Mr. Twitty would have to be made a witness for Spencer Kellogg so that there could be no cross examination.

Meanwhile, on September 26, the Court, having previously on August 27 sustained Camilla's objection to the asserted claim for attorney's fees on the ground that the highly technical requirement of the statutory notice, Georgia Code Ann. § 20–506, had not been fulfilled, allowed a supplemental complaint setting out that proper notice under the Georgia Statute had been given by letter to Camilla on September 9. This was based upon Fed.Rules Civ.Proc. rule 15 (b), 28 U.S.C.A., as an allegation of an event which occurred subsequent to the filing of the pleading to be supplemented.

With the case in this posture and after Camilla filed its more definite statement on September 30, Spencer Kellogg on October 9 moved to strike Camilla's Sixth Defense under F.R.C.P. 37(d) for the wilful failure of Mr. Perry to appear for the taking of his deposition. Camilla countered with an affidavit from Mr. Perry's physician reiterating that the emotional stress of a court appearance or similar situation would be dangerous to Mr. Perry and possibly imperil his life. There was no medical evidence, report, certificate or information which either denied or challenged this detailed certificate. The Court seemed to attach predominant significance to the fact that Mr. Perry had been summoned as a petit juror for that term and, the Court thought, had actually served during the week, although it seems quite clear that the Clerk or Marshal had excused him from further service.

A hearing was held on this final motion and on October 11, the Court ordered that three specific items [5] of Camilla's Sixth Defense pertaining to increased operational costs alleged to arise from faulty operation of the expellers be stricken on the dual express ground that

no basis for relief was stated and for Mr. Perry's failure to appear for deposition.

On October 17, the District Court entered summary judgment and judgment on the pleadings for Spencer Kellogg in the following amount:

| | | |
|---|---|---:|
| (a) | Principal | $11,057.51 |
| (b) | Interest @ 8% subsequent to maturity | 1,784.73 |
| (c) | Late charges 5% | 552.87 |
| (d) | Attorney's fees | 1,926.33 |
| | | $15,311.44 |

To obtain this Spencer Kellogg formally conceded for the purpose of the motion for summary judgment that Camilla was entitled to a full credit for the $2,917.49 which it alleged was the cost of parts and labor of actual repairs to the faulty machinery.

Camilla's contentions on this appeal may be grouped into four primary areas: (1) that a charge of 5% for late payment in conjunction with 8% interest after maturity is usury; (2) that (a) increased operational costs and (b) lost profits are proper items of recovery; (3) that attorney's fees cannot be allowed on a supplemental complaint showing notice given long after suit is brought; and (4) that the Court erred in striking Camilla's Sixth Defense for failure of Mr. Perry to appear for oral examination on deposition, and therefore judgment should have been entered for Camilla or a trial ordered because of the existence of factual controversies.

■■ The legal maximum interest rate in Georgia is 8%. Georgia Code Ann. § 57–101. Camilla concedes that the inclusion of interest in the face amount of the note and a consequent charge of interest on interest after maturity is not contrary to law but insists that the addition of the 5% late charge taints the entire transaction with usury. We do not agree. It is clear that under the law of Georgia for usury to exist there must be an intent to circumvent

---

5. Extra cost of coal and electricity. $2,280.76
Cotton seed oil lost through incomplete extraction 3,126.82

Excess labor required 3,110.79

$8,518.37

the usury laws. Bailey v. Newberry, 52 Ga.App. 693, 184 S.E. 357; Bellerby v. Goodwyn, 112 Ga. 306, 37 S.E. 376. Here the obvious intent and the one the law must credit, there being no contrary showing, was that the note would be paid when due. Had this been done, as it was entirely within the power of Camilla to do, and as its contract bound it to do, the highest interest charged would have been but 5%, less than the legal maximum.

That an amount greater than one computed on the legal rate is collectible in Georgia upon default is seen in Alexander v. Troutman, 1 Ga. 469. Camilla strongly urges upon us Clark v. Kay, 26 Ga. 403, an opinion never cited by the Georgia Courts, in which in sweeping language it is said that any stipulation of damages for the nonpayment of money which exceeds the legal interest rate is usurious. In that case, however, the suit was upon a bond given to secure several notes. The stipulated recovery on the bond would have equaled the payment due on the note and was thus greatly excessive. Citing Swift v. Crow, 17 Ga. 609, which carefully distinguished between liquidated damages and a penalty, the Court in Clark struck down the bond. In this state of the Georgia law, the general authorities cited by the Court below are convincing that there is no usury here. 82 A.L.R. 1213; 30 Am. Jur. Usury § 45, p. 356.

 We are also certain that there was no error in the dismissal of Camilla's Seventh Defense for lost profits.[6] This action was proper regardless of whether or not it was timely asserted because, as stated by the Court below, the damages alleged were so speculative and remote that no recoverable claim was stated. The Georgia Courts are in accord that this is so. Firestone Tire & Rubber Co. v. Shore, 31 Ga.App. 644, 121 S.E. 709; Thornton & Warren v. Cordell, 8 Ga.App. 588, 70 S.E. 17; Georgia Grain Growers Ass'n v. Craven, 95 Ga. App. 741, 747, 98 S.E.2d 633; Sanford-Brown Co. v. Patent Scaffolding Co., 199 Ga. 41, 33 S.E.2d 422; D.A. Tompkins Co. v. Monticello Cotton Oil Co., C.C. Ga., 153 F. 817. The rule has been stated specifically for this type of business: " 'The current profits of a going manufacturing concern are, as a general rule, too uncertain to form the basis of an award of damages for breach of contract affecting the operation of the plant.' Harper Furniture Co. v. Southern Express Co., 148 N.C. 87, 62 S.E. 145, 30 L. R.A.,N.S., 483 * * *," Consolidated Phosphate Co. v. B. F. Sturtevant Co., 20 Ga.App. 474, 93 S.E. 155, 156.

In fact, the wording of the Georgia Code [7] expressly precludes such recovery for here, the profits which might reasonably have accrued are dependent upon such imponderables as the business acumen of Camilla's management, availability of credit to procure raw materials or to finance operation, availability of a market for the manufactured products, the effectiveness of its sales force and like considerations which are the basis of the policy behind the rule.

The cases [8] so strongly urged by Camilla fall within the Code and are not in conflict with the rule.

6. In brief it alleged that had the machines worked properly, Camilla could have bought 4700 more tons of cotton seed at a cost of $68 per ton (total $319,-600); and for an additional operational cost of $39,000 could have produced specified additional quantities (in millions of pounds) of cotton seed oil, meal, linters and hulls having a gross sales price of $384,680 which, after deducting cost of operations, commissions, etc. would have yielded a net profit of $23,-492.

7. Georgia Code Ann. § 20-1406. "Remote or consequential damages.—Remote or consequential damages are not allowed whenever they cannot be traced solely to breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract."

8. James v. Dayton Rubber Mfg. Co., 57 Ga.App. 511, 196 S.E. 298; Ayers v. John B. Daniel Co., 35 Ga.App. 511, 133

However, Camilla's claim for increased operational expenses stands differently. This Sixth Defense was, we feel, too summarily dismissed on its intrinsic merits or asserted lack thereof, on the pleadings. As Spencer Kellogg conceded, the Court properly allowed Camilla credit for the cost of actual repairs to the expellers. Cochran v. Jones, 85 Ga. 678, 11 S.E. 811; Johnson v. Winship Machine Co., 108 Ga. 554, 33 S.E. 1013. Actual losses or costs incurred in attempts to put the machines into warranted [9] operating order or until the defects could be adequately determined and corrected are a proper item for such recovery. But damages recoverable on this ground are closely akin to costs of mitigation. Thus Camilla must show that for the brief period involved here it acted reasonably in continuing to operate these machines for some two months during which time it was attempting to put them in proper order, and then any recovery must be limited to those costs or additional expenses which were reasonably and actually incurred. Henderson Elevator Co. v. North Georgia Milling Co., 126 Ga. 279, 55 S.E. 50; Henly v. Sears-Roebuck & Co., 84 Ga.App. 723, 67 S.E.2d 171; Cochran v. Jones, 85 Ga. 678, 11 S.E. 811; National Sheet Metal Co. v. McKenzie, 62 Ga.App. 292, 8 S. E.2d 93; D. A. Tompkins Co. v. Monticello Cotton Oil Co., D.C.Ga., 153 F. 817.

Whether the actions of Camilla were reasonable under the circumstances raises factual questions which cannot be answered or foreclosed on the mere pleadings. The existence of such questions makes this case, at this stage, not one for judgment on the pleadings. It depends on the facts, established on trial, or if finally undisputed, on summary judgment. Millet v. Godchaux Sugars, Inc., 5 Cir., 241 F.2d 264; Carss v. Outboard Marine Corp., 5 Cir., 252 F.2d 690, 1958 A.M.C. 638.

Had this view of the substantive law on the Sixth Defense been taken by the Court below, we would doubt seriously that this careful and patient District Judge would have felt that the circumstances of Mr. Perry's admitted bad health and the good faith belief of his conscientious counsel that the life of his client might be in the balance if he persisted in having him testify warranted the visitation of any such decisive and unremitting discipline under F.R.C.P. 37 (d). Under these circumstances we do not pass specifically on the abuse of the Court's discretion. We merely hold that as the dismissal was bottomed on a mistaken, but good faith, understanding of substantive law, it should not be self-operative when that basic error is removed.

On the question of attorney's fees, we are convinced that the Court was right. The federal practice under F.R.C.P. 15(d) makes liberal allowance for amending and supplemental pleadings. The Georgia Code Ann. § 20–506 formerly provided that notice of a claim for attorney's fees be given ten days before suit. This provision is no longer a part of the statute. Instead, a contract for attorney's fees is made void if the obligation is paid in full within ten days after notice is given. No provision is made as to when, with relation to the bringing of suit, the notice must be given to be effective. If, as Camilla con-

S.E. 878; Levy, Brother & Co. v. Allen, 53 Ga.App. 246, 185 S.E. 369.

9. Although asserted upon brief that the contract of sale, note 3, supra, provides no warranties whatever other than of title, it seems beyond argument that there was at least a question of fact whether the sales contract made an express or implied warranty as to operational output and condition of the expellers. This was certainly "indorsed hereon in writing" and from the bare pleadings it could not be determined whether Camilla's contract statement that the property "has been examined by Purchaser and is accepted in its present condition" either did or could encompass productive capacity after installation. In fact, by acceding to the set-off for costs of repairs, Spencer Kellogg in effect conceded this point or at least affirmed at this stage that there was a basis for the claim of a warranty and a breach thereof.

**168**

tends, the purpose of the statute is to discourage litigation as well as give some relief to defaulting debtors, that policy would have been served here by payment even at this late date without detriment to Camilla's counterclaim. Indeed, Camilla was better off for it had now had two years and vigorous representation by its able counsel in which to determine at that late date whether the prospect of success on defense and counterclaim was sufficiently attractive to risk being cast for about two thousand dollars for the adversary's attorney's fees.

The note gave Spencer Kellogg a claim for attorney's fees which was not destroyed by the filing of a petition on the very obligation there provided for. The claim was merely imperfect until proper notice was given with its consequent opportunity to avoid payment of attorney's fees.

■ The result is that the summary judgment was correct insofar as it adjudged that there was no usury and that attorney's fees, as such, were recoverable after statutory notice and the filing of a supplemental complaint. On remand, it will be treated as a partial summary judgment, F.R.C.P. 56. As Spencer Kellogg did not appeal from the allowance of the credit of $2,917.49 there would ordinarily be no basis for relieving it of the consequences of its concession. However, at the time Spencer Kellogg gave the credit, there was nothing pending[10] before the Court except the main claim on the note, the interest, late charges and attorney's fees and Camilla's counterclaim for the actual expenses of repairs. Had the Trial Court left the Sixth Defense pending, as we have now held it should, there was and could have been no basis for a summary judgment on the amount of the debt remaining unpaid, the amount of interest, the amount of the late charge or the amount of the attorney's fees. These would be ascertain-

able only after it was finally determined whether Camilla had sustained its Sixth Defense by proof and verdict and if so, the amount, if any, to be allowed as an offset had been determined. As the concession was made solely for the purpose of the motion for summary judgment which ought not to have been granted, these items making up the $2,917.49 credit are likewise open on remand.

So this case, begun in 1955, returns three years later to the place of its beginning with only three phases authoritatively settled. After motions and counter motions, pleas and hearings and this appeal what Camilla asserted in its very first answer—defects in the machinery with consequent direct damage— must and will, at long last, be tried.

Affirmed in part, reversed and remanded in part.

10. In its motion for summary judgment Spencer Kellogg alleged:

"That all of the defenses of the defendants have been stricken except those claiming credit for $2,917.49 for repairs.

Three
"That in the state of the record and for this motion only the plaintiff is willing to, and does allow the defendants credit for said claimed sum of $2,917.49."